THE INTERNATIONAL BANK OF CHICAGO *et al.*

*v.*

GEORGE WILSHIRE.

⌈108   143
⌊122   581

*Filed at Ottawa November 20, 1883.*

1.  MORTGAGE—ASSIGNMENT—*conveyance in fee by mortgagor to mort-gagee—effect as to prior assignee of the debt secured—whether there is a merger.*  A conveyance of real estate by a mortgagor to the mortgagee after the assignment of the notes secured and the mortgage to another, taking the same in good faith and for value, without the knowledge or assent of such assignee, will not, as to him, operate as a merger of the mortgage, or affect his rights; and after the recording of the assignment of the mortgage, a purchaser from the mortgagee after the mortgagor's release of his equity of redemption will take subject to the equitable rights of the assignee.

2.  A mortgagee, after the release to him of the mortgagor's equity of redemption, may keep the mortgage alive in favor of one to whom he had pledged the mortgage debt before the release of the equity of redemption, and he may also obtain future advances on such assignment, which will be evidence of an intention to keep the mortgage alive for the protection of his assignee; and in such case no merger will take place.

3.  A conveyance of a mortgagor's equity of redemption to the mortgagee, after the latter has parted with the mortgage and notes thereby secured, by assignment to a *bona fide* purchaser or creditor as a security, can not, in equity, be treated as a merger of the mortgage estate in the fee, for the reason that the original mortgagee, in equity, at the time of such conveyance had ceased to be such mortgagee, so that the two titles could not unite in the same person.  If such conveyance should be made to the assignee of the mortgage, there would be greater plausibility in claiming a merger; but even then, if equity had required it, to promote justice, it would not have been treated as a merger.

4.  CHANCERY—*affirmative relief on answer—what so regarded.*  On bill to enjoin the sale of real estate on execution issued on a judgment in a proceeding by *scire facias* to foreclose a mortgage, the court, on hearing on bill, answer and replication, entered a decree, allowing the defendant to proceed and sell under his execution, and directing the sale to be made in the same way the law required, independent of the decree:  *Held,* that the decree was not subject to the objection of giving affirmative relief without a cross-bill.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. T. A. MORAN, Judge, presiding.

Messrs. ROSENTHAL & PENCE, for the appellants the International Bank, Greenebaum & Foreman, and Levi Rosenfeld:

A merger of a mortgage into a greater estate is always a matter of intention, and where the intention to merge a mortgage in the fee is established, nothing can be shown against it. *Campbell* v. *Carter*, 14 Ill. 286; *Jarvis* v. *Frink*, id. 396; *Edgerton* v. *Young*, 43 id. 464; *Fowler* v. *Fay*, 62 id. 365; *Ætna Life Ins. Co.* v. *Corn*, 89 id. 173.

The Honore mortgage standing of record in Walker at the time of the conveyance by Honore to him, there was a presumption of a merger, and deeds made by Walker, and put of record before the filing for record of the assignment of the Honore mortgage to Wilshire & Co., would be protected against the Honore mortgage. *Ogle* v. *Turpin*, 102 Ill. 148.

Where a mortgage is paid and satisfied, or is merged in the larger estate, it ceases to exist as a security in the hands of the mortgagee, and the legal title is reinvested in the mortgagor by operation of law. *Ryan* v. *Dunlap*, 17 Ill. 43; *Wiltham* v. *Brooner*, 63 id. 344; *Andrews* v. *Thayer*, 30 Wis. 228; *Ladue* v. *Railroad Co.* 13 Mich. 395; *Richardson* v. *City of Cambridge*, 2 Allen, 118; *Merrill* v. *Chase*, 3 id. 339.

Further advances subsequent to the record of an intervening deed or incumbrance can not be enforced as against the intervening purchaser or incumbrancer. *Terhoven* v. *Kerns*, 2 Barr, 99; *Brinkerhoff* v. *Marvin*, 5 Johns. Ch. 326; *Montgomery County's Appeal*, 36 Pa. St. 132; *Griffin* v. *New Jersey Oil Co.* 3 Stockt. 52; *Spader* v. *Lawler*, 17 Ohio, 371.

The only cases in this State on the question, are *Fry* v. *Bank*, 11 Ill. 155, *Collins* v. *Carlyle*, 13 id. 254, *Speer* v. *Skinner*, 35 id. 282, and *Schultze* v. *Houfes*, 96 id. 335.

The Honore mortgage having ceased to exist, can have no operation, or be revived, so as to charge the estate of Walker in his own hands, without some instrument in writing made and signed by him. *Peckham* v. *Haddock*, 36 Ill. 39; *Rich-*

*ardson* v. *City of Cambridge,* 2 Allen, 118; *Merrill* v. *Chase,* 3 id. 338.

The assignment of Walker to Wilshire & Co. had ceased to be operative on account of the merger, and before the indebtedness to them now existing was created. Being a nullity it was not entitled to be recorded, and after record was no notice. *Moore* v. *Hunter,* 1 Gilm. 317; *St. John* v. *Conger,* 40 Ill. 536; *James* v. *Morey,* 2 Cow. 310; *Mesick* v. *Sunderland,* 6 Cal. 315; *Kerns* v. *Savage,* 2 Watts, 77; *Tillman* v. *Cowand,* 12 S. & M. 265.

After the extinguishment of the Honore mortgage by merger, and such merger appearing of record, a judgment of foreclosure by *scire facias* would also be a nullity, for a proceeding by *scire facias* is a proceeding upon a record, and a judgment in *scire facias* creates no lien upon the mortgaged premises, but is merely the means of making available the lien already existing. *State Bank* v. *Wilson,* 4 Gilm. 61; *Chickering* v. *Failes,* 26 Ill. 517; *Chestnut* v. *Chestnut,* 77 id. 346; *Woodbury* v. *Manlove,* 14 id. 23.

Mr. W. T. BURGESS, for the appellant A. G. Hunt:

Hunt assigns an error peculiar to himself,—that affirmative relief was granted to his co-defendant in the original bill (Wilshire) without any cross-bill whereby the issues between him and Wilshire could be raised and tried. Such relief can not be granted without a cross-bill. *Ballance* v. *Underhill,* 3 Scam. 453; *Edwards* v. *Helm,* 4 id. 142; *McCagg* v. *Heacock,* 42 Ill. 153; *Hanna* v. *Ratikin,* 43 id. 462; *Titsworth* v. *Stout,* 49 id. 78; *Norman* v. *Huddleston,* 64 id. 11; *Price* v. *Blackmore,* 65 id. 386.

Messrs. J. P. & J. R. WILSON, for the appellee:

The burden of proof on the question of merger is upon the appellants, and Wilshire & Co. were not chargeable with constructive notice of the deed from Honore to Walker. *Heaton*

v. *Prather et al.* 84 Ill. 330; *Hosmer* v. *Campbell*, 98 id. 572; *Stuyvesant* v. *Home*, 1 Sandf. Ch. 426; *King* v. *McVickar*, 13 id. 192; *Blair* v. *Ward*, 1 Stockt. 119; *Iglehart* v. *Crane & Wesson*, 42 Ill. 261; *Meacham* v. *Steele*, 93 id. 141; *Buchanan* v. *International Bank*, 78 id. 500.

Where the mortgagor conveys the equity of redemption to the mortgagee, there arises no such presumption of a merger as will protect a third party subsequently buying from the mortgagee, as against the purchaser of the note secured by the mortgage who has bought such note prior to the deed from the mortgagor to the mortgagee, (*Edgerton* v. *Young*, 43 Ill. 464,) unless the mortgagee has entered satisfaction on the record. *Ogle* v. *Turpin*, 102 Ill. 148. See, also, Jones on Mortgages, sec. 872; *Purdy* v. *Huntington*, 42 N.Y. 304.

Merger should not be allowed where the two estates may well stand together, and there must be no right outstanding to intervene between the right held and the right acquired. *Hunt* v. *Hunt*, 14 Pick. 324. See, also, 2 Washburn on Real Prop. 193; Jones on Mortgages, secs. 853, 872.

A merger is never allowed to take place where it will do injustice. *Starr* v. *Ellis*, 6 Johns. 394; *Edgerton* v. *Young*, 43 Ill. 464; *Huebsch* v. *Scheel*, 81 id. 281; 1 Hilliard on Real Prop. 444; *Richardson* v. *Hockenhull*, 85 id. 124; *Stanton* v. *Thompson*, 49 N. H. 272; *Kellogg* v. *Ames*, 41 N. Y. 259.

Walker, by treating the mortgage as still subsisting, is estopped from insisting on its merger. *Powell* v. *Smith*, 30 Mich. 451; *Kellogg* v. *Ames*, 41 N. Y. 259.

Purchasers from Walker, after the recording of the assignment of the Honore mortgage, have no greater rights than Walker would have as against the Honore mortgage.

The judgment in the *scire facias* proceeding is a bar to all defences to the Honore mortgage that could have been set up as defences to such suit. *Hobson* v. *Evan*, 62 Ill. 146; *White* v. *Watkins*, 23 id. 480; *Carpenter* v. *Mooers*, 26 id. 162.

The decree does not grant affirmative relief to Wilshire.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the month of October, 1865, Samuel J. Walker, being the owner of certain real estate in the city of Chicago, conveyed it to Henry H. Honore, who, on the same day, executed a mortgage on the premises to Walker, to secure the payment of two promissory notes of the same date, executed by Honore to Walker, for $18,000 each, due in one and two years after date. They bore eight per cent interest. The mortgage recited that the notes were given for part of the purchase money. The deed and mortgage were recorded on the 30th day of December, 1865. Soon after, Walker sold one of the notes to Wilshire & Co., of Cincinnati, and left the other with them as collateral security for any sum he might afterwards owe them. The notes and mortgage have ever since remained in their possession or control. When the note due in twelve months matured, Walker paid an amount equal to the amount due, which, with the other note not then due, he pledged as collateral security for any sum they might afterwards advance to him. Wilshire & Co. still held the note and mortgage, and they also purchased other commercial paper, from time to time, from Walker, indorsed and guarantied by him, until the fall of 1872. In November of that year Wilshire & Co. placed the mortgage, and the indorsement thereon, dated in 1866, on record in the proper office. In 1871 Walker procured from Honore a quitclaim deed of the premises embraced in the mortgage, which he had recorded, but of this Wilshire & Co. had no other notice than the record. Walker, at all times, after he assigned the mortgage to Wilshire & Co., was indebted to them, and to secure which they held the Honore notes and mortgage. In 1877 George Wilshire, as surviving partner of the firm, commenced proceedings by *scire facias* in the Superior Court to foreclose the mortgage, against Honore, which resulted, at the September term of that year, in a judgment. In 1878 appellants sued out a writ of error from this court

to reverse that judgment, but on a hearing it was affirmed, and appellants then filed the original and cross-bills to enjoin the sale of the mortgaged premises under the judgment in *scire facias.* On. a hearing, the court below found that the notes and mortgage were pledged to secure indebtedness from Walker to the Wilshires, and the amount of such indebtedness was $65,000, and directed the sale of so much only of the property covered by the Honore mortgage as remained unsold and in the hands of Walker at the date of the recording of the assignment of the mortgage to the Wilshires, under the *scire facias* judgment, and that the property be sold in the inverse order of its alienation.

The question presented, and upon which this controversy must turn, is, whether the conveyance by Honore, the mortgagor, to Walker, the mortgagee, operated for all purposes as a merger and extinction of the mortgage previously assigned to and held by the Wilshires. Whether it operated as a merger as between Honore and Walker is unimportant, and we will not stop to inquire. The question is, what effect did it have on the rights of the Wilshires, and purchasers of a portion of the lots embraced in the mortgage, after the assignment was spread on the record. That Walker was indebted to the Wilshires, and they held the Honore notes and mortgage, assigned to them as security for indebtedness Walker owed them when he procured the quitclaim deed from Honore, there seems to be no question, and it would seem to be an incontrovertible proposition that the conveyance, without the consent of the Wilshires, did not, nor could it, have the slightest effect on their rights. The lien they then held was in every particular legal and equitable, valid and binding. This being true, there is no known means by which Walker or Honore, or both combined, could, without the consent of the Wilshires, or at least by some omission of duty on their part, in the slightest degree affect or impair their rights.

As between Walker and the Wilshires, there can not be the shadow of a doubt that after Honore quitclaimed the property to Walker it was competent for Walker and the Wilshires to keep the mortgage alive to secure money the former owed then, or might subsequently owe the latter. There is not the slightest evidence that Walker intended to merge the mortgage with the fee, so as to extinguish it, so far as the pledge to the Wilshires was concerned. On the contrary, the inference is that it was intended to be kept in full force as a security for the money Walker owed the Wilshires. Walker so treated it when he subsequently obtained advances on the mortgage and notes as security. Nothing was said or done which negatives the conclusion that for that purpose all parties to the transaction regarded it as a subsisting security. Had Walker, after acquiring the equity of redemption, mortgaged the property to the Wilshires to secure existing indebtedness as well as future advances, and the mortgage been recorded, no one would have questioned that it would have become a lien that would have held the property against all subsequent purchasers. Then why could not Walker pledge that mortgage as security for such loans? As between the parties there can be no question that he might do so, and the act would be valid.

Here was a mortgage given to secure two notes, that was legal and valid. These notes and mortgage were legally assigned to secure a *bona fide* debt. The assignment of the mortgage was recorded in the proper office, and became notice of the lien to the whole world. There is no pretense that these notes were ever paid or the mortgage ever in fact satisfied, and we have seen the mortgage was not merged with the fee, because the parties did not intend a merger, and it would be inequitable and unjust to hold that the conveyance to Walker operated to extinguish the mortgage. Walker, in equity, was not the mortgagee when Honore conveyed to him. The Wilshires were, in equity, the mortgagees, and the two

titles did not unite in the same person, and never have. Had Honore conveyed to the Wilshires, there would have been more plausibility in claiming there was a merger,—and even then, if equity had required it to promote justice, it would not have been treated as a merger. Whether the union of two such titles in one person shall operate as a merger, depends on the intention of the parties and the equities of the case.

The Wilshires then holding a valid lien on the lots in controversy, and the mortgage and its assignment being on record and notice to all persons, those purchasing after the assignment was recorded did so subject to the lien of the mortgagee, and at their peril. The record was full notice of appellee's claim, and having so purchased they must be held to have done so in view of all of appellee's rights, and the property purchased of Walker after the assignment must be held subject to sale under the *scire facias* judgment.

The fact has been alluded to that in the absence of William Wilshire in California, his brother George made a conditional arrangement to surrender the notes and mortgage and to take another mortgage on other property, and the notes and mortgage were left with Kerfoot. The evidence clearly establishes the fact that this arrangement was not consummated, and was not to be unless it was approved by William Wilshire on his return from California, and on his return he refused to sanction the arrangement. All must know that such an incomplete arrangement could have no effect on the rights of appellee.

It is also urged that the court below erred in granting affirmative relief to appellee without a cross-bill. We do not see that any relief of any kind was granted, unless it was the dismissal of the bill and permitting the property to be sold to satisfy the judgment. Appellee, in the absence of any decree, was required to sell in the inverse order of alienation, and only to sell such portion of the property as was pur-

chased after the assignment of the mortgage was recorded. This was the right of appellee, independent of the decree. It conferred on him no right he did not possess before.    Nor did it deprive appellants of any rights.    It simply permitted appellee to proceed to obtain satisfaction under an execution on his judgment at law.

Having discussed the questions deemed important to the decision of the case, we dismiss the others without further consideration.

Failing to perceive any error in the record, the decree of the court below is affirmed.

*Decree affirmed.*