C. H. McCORMICK, Jr. *et al.*

*v.*

AUGUSTUS BAUER *et al.*

*Filed at Ottawa November 11, 1887.*

1.   STARE DECISIS—*as to decisions in the Supreme Court.*   The decision of a question by this court, when involved in a subsequent case in which the parties are not identical with those in the former case, can not be treated as *res judicata;* yet, on the principle of *stare decisis,* the holding is just as binding on this court as any of its decisions, and will govern it, unless some imperative reason appears for departing from it.

2.   PRIOR AND JUNIOR INCUMBRANCERS—*adjustment of equities between them—and when priority of right is lost.*   A junior incumbrancer, acting in his own interest, and to accomplish a purpose of his own by doing something to make his own security available,—as, in defeating the lien of a prior deed of trust on the same property,—will not thereby be entitled to any superior equity over another incumbrancer whose lien was subject to that so defeated, but prior to the contesting creditor, or be entitled to be reimbursed for the expenses in defeating the first lien, when the intervening creditor, who is thereby benefited, has not requested or induced the junior creditor to do so.   If the latter had discharged the prior lien by payment, in order to save himself, a different rule would apply.

3.   Where a mortgagee transfers the notes secured, and makes a written assignment of the mortgage, which assignment is not recorded until after the mortgagor makes a conveyance of the mortgaged premises to the mortgagee, and the latter executes another mortgage of the same, which deed and subsequent mortgage are first recorded, the last mortgage will take precedence of the first; but another mortgage or deed of trust executed by him after the recording of the assignment of the first mortgage, will be subject thereto.

4.   ATTACKING JUDGMENT COLLATERALLY—*for mere error.*   A judgment foreclosing a mortgage by *scire facias,* and the sale of the mortgaged premises thereunder, can not be defeated by errors and irregularities in the proceeding not affecting the jurisdiction of the court.

Appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. W. T. BURGESS, for the appellants:

The sale under the judgment of foreclosure by *scire facias* was void, for the reasons, first, the description of the land is

uncertain on its face; second, when applied to the subject matter, is uncertain; and third, the land was sold subject to an incumbrance, when none existed.

As to the description being void for uncertainty, see *Jackson* v. *Rosevette,* 13 Johns. 102; *Jackson* v. *Striker,* 1 Johns. Cas. 284; *Tallman* v. *White,* 2 Com. 72; *Mason* v. *White,* 11 Barb. 185; *Peck* v. *Mallams,* 10 N. Y. 530; *Haven* v. *Cram,* 1 N. H. 94; *Marmaduke* v. *Tennant,* 4 B. Mon. 210; *Fenwick* v. *Floyd,* 1 H. & G. 000; *Thomas* v. *Turvey,* id. 435; *Stout* v. *Cook,* 37 Ill. 283; *Hughes* v. *Streater,* 24 id. 650; *Shackleford* v. *Bailey,* 35 id. 391; *Laflin* v. *Harrington,* 16 id. 304.

The sale subject to incumbrances, when none existed, was void. *Bullard* v. *Hinckly,* 9 Greenlf. 289; *Dougherty* v. *Linthicum,* 8 Dana, 194.

Messrs. Jenkins & Harkness, for the appellant McCormick:

For contesting the first decree of the court, securing the reversal thereof, and a final reduction of the debt of Greenbaum & Foreman from $201,657.70 to $64,893.13, appellants, who were the real active parties to such contest, are entitled to the benefits resulting from such prior incumbrance. *Harper* v. *Ely,* 70 Ill. 581; *Arnold* v. *Foot,* 7 B. Mon. 66; *McCormick* v. *Knox,* 15 Otto, 122.

Appellants are entitled to hold lots 9 to 14 as the fruits of their diligence and activity in removing the prior incumbrance of Greenbaum & Foreman, upon the principle that the diligent creditor is entitled to the fruits of his diligence. *Whalen* v. *Bishop,* 58 Ill. 162; *Lyon* v. *Robbins,* 46 id. 276; *McNary* v. *Southworth,* 58 id. 473; *Smith* v. *Lind,* 29 id. 24; *McDermott* v. *Strong,* 4 Johns. 687; *Miller* v. *Sherry,* 2 Wall. 237; *Gordon* v. *Lowell,* 21 Maine, 251; *Coring* v. *White,* 2 Paige, 567; *Hayden* v. *Bucklin,* 9 id. 512; *Edmiston* v. *Hyde,* 1 id. 637; *International Bank* v. *Rappleye,* 93 Ill. 396.

When a prior lien has been removed by a junior lien holder, he is always protected as against an intervening incumbrance.

*Young* v. *Morgan,* 89 Ill. 199 ; *Redmond* v. *Burroughs,* 63 N. C. 242 ; *Page* v. *Foster,* 7 N. H. 392 ; *Arnold* v. *Foot,* 7 B. Mon. 66 ; *Cottrell's Appeal,* 23 Pa. St. 294 ; *Ellsworth* v. *Lockwood,* 42 N. Y. 89 ; *Tyrrell* v. *Ward,* 102 Ill. 29.

When a son having a prior mortgage, voluntarily and without payment released it to his mother, who owned the lot, it was held that such release was for her benefit only, and not for that of a junior mortgagee. *Spaulding* v. *Crane,* 46 Vt. 292.

The debt may be paid and extinguished, but the lien of it will not be thereby discharged, if to protect the equities of all parties the lien should be kept alive. *Flagg* v. *Geltmacher,* 98 Ill. 293 ; *Shaver* v. *Williams,* 87 id. 469.

The *scire facias* proceedings were ineffectual to confer title upon appellees, because the sale was made under a second *pluries* special writ of *fieri facias,* which was issued without authority of law.

The *scire facias* foreclosure was ineffectual to confer title upon appellees, because the property sold was not that described in the mortgage. *Marshall* v. *Maury,* 1 Scam. 231 ; *Russell* v. *Brown,* 41 Ill. 143.

Messrs. SMITH & PENCE, for the appellees :

The indebtedness secured to Greenbaum & Foreman under Rogers' trust deed having been paid before sale of the premises conveyed thereby under Greenbaum decree, the Honore mortgage, under which appellees claim title, became the first lien.

All persons taking the Walker title after the record of the assignment of the Honore mortgage to Wilshire, after November 19, 1872, took subject to that mortgage. *International Bank* v. *Wilshire,* 108 Ill. 143.

The doctrine of superior diligence only applies to the pursuit and subjection of equitable assets,—that is, assets upon which there is no legal claim, and which can only be reached through the aid of the chancellor. *Silk* v. *Prime,* 2 Lead. Cas. in Eq. (Am. notes,) 381, 388, 389, 390 ; 1 Story's Eq. Jur. sec. 553 ;

*Atlas Bank* v. *Nahant Bank*, 3 Metc. 581; *Purdy* v. *Doyle*, 1 Paige, 559; *Codwise* v. *Getston*, 10 Johns. 522.

The sheriff's sale under the judgment in *Wilshire* v. *Honore* is not void for irregularity or uncertainty of description. Judgment does not become dormant for seven years. The *Wilshire* v. *Honore* mortgage was not barred by limitation.

Mr. Justice Mulkey delivered the opinion of the Court:

Augustus Bauer, on the 22d day of January, 1886, exhibited his bill in the circuit court of Cook county, against the appellants, Cyrus H. McCormick, Jr., and others, praying for the partition of certain real estate, being all, or some portions of, lots 9, 10, 11, 12, 13 and 14, block 10, in Samuel J. Walker's dock addition to Chicago, and described in the bill as follows: "Beginning at the north-east corner of said lot 9, running thence south, on the east line of said lots, 440 feet, to a point 40 feet south of the north-east corner of said lot 13; thence south-westerly 266 feet, more or less, to a point on the west line of said lot 14, 72 feet south of the north-west corner thereof; thence north on the west line of said lots 9, 10, 11, 12, 13 and 14, 572 feet, more or less, to the north-west corner of said lot 9; thence east on the north line of said lot 9, 240 feet, to the place of beginning."

It is averred in the bill, that the complainant, and defendants C. Edward Schoellkopf, International Bank of Chicago and Berthold Loewenthal, are, respectively, seized in fee of an undivided equitable estate in said premises, in the following proportions,—that is to say, that complainant is entitled to $\frac{1807}{10000}$ parts thereof, Schoellkopf to $\frac{1800}{10000}$ parts, International Bank to $\frac{4817}{10000}$ parts, and Loewenthal to $\frac{1576}{10000}$ parts; that said Loewenthal holds the legal title to the whole of said premises, for the use of himself and co-tenants, in the proportions stated. It is further charged in the bill, that the defendants McCormick, the Third National Bank of Chicago, Huntington W.

Jackson, Alpheus C. Badger, and others, by virtue of certain deeds and legal proceedings particularly set forth in the bill, claim to have some interest in the premises, which deeds, etc., complainant asks to have set aside as a cloud upon the title of himself and co-tenants. Defendants Loewenthal, Schoellkopf and the International Bank answered, admitting the averments in the bill, and also filed a cross-bill, setting up the same facts charged in the original bill, and asking like relief. The other defendants answered, denying the equities of the bill and cross-bill, and setting up various matters not important to be particularly noted in the view we take of the case. The cause was heard upon the pleadings and proofs, resulting in a decree in conformity with the prayer of the bill and cross-bill. From that decree this appeal is prosecuted.

It appears from the record that Samuel J. Walker, being the owner in fee of blocks 1, 2, 20, 21, 22, 23 and 24, Canalport addition to Chicago, by warranty deed, bearing date October 29, 1865, conveyed the same to Henry H. Honore; that the latter thereupon executed to Walker a mortgage upon the purchased premises, to secure Honore's notes to Walker, for the sum of $36,000, payable in one and two years, with interest at eight per cent per annum. The deed and mortgage were both recorded December 30, 1865. These notes were negotiated by Walker to Wilshire & Co. before maturity, in due course of business, and for a valuable consideration. Walker also made a written assignment of the mortgage. This transaction is claimed by appellees to have taken place in 1866, though the assignment of the mortgage was not placed on record till the 19th of November, 1872. A judgment of foreclosure of this mortgage was obtained, in a proceeding by *scire facias,* on the 3d of September, 1877. On the 14th of August, 1884, the mortgaged premises were sold by the sheriff to the International Bank, under a *pluries* special execution issued upon said judgment, for $73,095,54, the amount of the judgment. The International Bank assigned the certificate of

37—122 ILL.

purchase to Loewenthal, who, on the 18th of November, 1885, received a sheriff's deed for the property in question. The appellees claim through this deed. It appears, however, that before the recording of the assignment of the Honore-Wilshire mortgage,—to-wit, on the 25th of January, 1871,—Honore, by quitclaim deed, reconveyed the premises, by the same description, to Walker. This deed was recorded on the 25th of March following. On the application of Walker, the city council of the city of Chicago, on the 12th of May, 1871, passed an ordinance vacating the said Canalport addition to the city, and Walker, in pursuance of the vacating ordinance, made a new subdivision of the whole tract, called Walker's dock addition, above referred to, the plat whereof was recorded November 18, 1871. It is claimed by appellees,—and we think the evidence sustains the claim,—that blocks 20, 21, 22 and 23, Canalport addition, including one-half of the abutting streets, are embraced within lots 9, 10, 11, 12, 13 and 14, block 10, Walker's dock addition.

On the 20th of March, 1872, Samuel J. Walker executed to John G. Rogers a trust deed upon the premises in question, by the description last mentioned, which was recorded on the following day, to secure an accommodation note of H. H. Walker, for $30,000. This note and trust deed, upon their execution, were negotiated and delivered by Samuel J. Walker to Greenbaum & Foreman, as collateral security for certain indebtedness due from him to them. On May 7, 1873, S. J. Walker executed to A. D. Rich another trust deed upon lots 11 to 20, being part of the same premises, to secure certain indebtedness from Walker to the Union Trust Company. On January 21, 1874, Walker, by quitclaim deed, conveyed the property to J. Irving Pearce. This conveyance, though absolute in form, was, in fact, as is conceded, a mortgage to secure indebtedness from Walker to the Third National Bank. Pearce, on the 1st of August, 1874, with the concurrence of Walker and the bank, conveyed said lots, from 9 to 14, in-

clusive, to Alpheus C. Badger, in trust that he would execute certain trust deeds upon the premises, to secure Walker's said indebtedness to the bank, and also certain other claims held against him by A. D. Hunt and others. These trust deeds were accordingly executed by Badger.

Appellants claim, under the foregoing conveyances, and certain legal proceedings based thereon, not only superior equities to the appellees, but also the better legal title. We do not think this claim is well founded in either respect. As we understand the case, this court has already substantially passed upon the controlling questions in it. It is true, the parties to the litigation in which these questions arose, were not precisely the same as those now before the court, and, consequently, their determination can not be treated as *res judicata* between the present parties. Yet, on the principle of *stare decisis*, they are just as binding upon this court as any of its decisions, and they must control, unless some imperative reason is perceived for departing from them. As already seen, the Honore mortgage was foreclosed by *scire facias*, in September, 1877, and this court, on the appeal of Honore, at its January term, 1884, affirmed the judgment, thus establishing its validity and conclusiveness between the parties to it. *Honore* v. *Wilshire*, 109 Ill. 103.

On the 24th of February, 1874, Samuel J. Walker filed a bill in the circuit court of Cook county, to enjoin Rich from selling under the trust deed made to him to secure Walker's indebtedness to the Union Trust Company. The trust company answered, and also filed a cross-bill, making Greenbaum & Foreman, and others, defendants. Greenbaum & Foreman, the Union Trust Company, and the Third National Bank and Hunt, filed cross-bills, impleading Walker and each other, and praying a foreclosure of the trust deeds to Rogers, Rich and Pearce, under which they respectively claimed. Walker, the Union Trust Company and the Third National Bank contested the claim of Greenbaum & Foreman, on the ground of usury,

and insisted that they had sufficient collaterals in their hands to satisfy and discharge all that was due them from Walker, secured by the Rogers trust deed, and asked that these collaterals should be first exhausted before the sale of any of the lots. The defence thus made against the Greenbaum & Foreman claim, under the Rogers trust deed, was ultimately successful. The court, upon the first hearing, overruled the defence of usury, and, by its decree, fixed the amount of Walker's indebtedness to Greenbaum & Foreman at $201,657.70. The decree in the case was subsequently reversed, on the ground that the court erred in overruling the defence of usury. This defence being successfully interposed on the second hearing, the amount of the first decree was reduced to $64,893.19, which sum was wholly paid out of the proceeds of the collaterals in Greenbaum & Foreman's hands, belonging to Walker, and the lots in question were sold under the decree, to satisfy the indebtedness of those claiming under the Rich and Pearce trust deeds. By an arrangement between the beneficiaries under these deeds, the property was bid off by McCormick. The contention of appellants now is, that by their superior diligence, and the expenditure of large sums of money in contesting the claim of Greenbaum & Foreman, they succeeded in greatly reducing the amount, and in defeating it altogether so far as the lots are concerned, and that because of this, they are, upon some principle of equity not very clearly defined, entitled to be reimbursed for such expenditures, and compensated for their superior diligence, out of these lots. We are aware of no legal principle upon which this contention can be sustained.

It is not claimed or pretended that this litigation was instituted, or that the expenses thereof were incurred, at the instance of appellees, or either of them. Nor is there any ground for the claim that appellants have, with their own means, discharged any lien or incumbrance upon the lots which stood in the way of appellees' title; and, as already seen, no part of

the proceeds of the lots was applied to the payment of Green-baum & Foreman's claim, which was the only one of all of them that affected appellees' title, and it had become an incumbrance on the property, as already seen, by reason of Wilshire's neglecting to have the assignment of the Honore mortgage recorded until after the execution and recording of the Rogers trust deed. The other trust deeds were all executed after the assignment was recorded, hence, all claiming under them are chargeable with notice of the rights of Wilshire and his assignees. *International Bank et al. v. Wilshire,* 108 Ill. 143.

Had appellants, with their own means, discharged the Rogers trust deed, or any part of it, they would clearly have been entitled to be subrogated to the rights of Greenbaum & Foreman, and to the amount of such payment the appellants would have had an equitable lien upon the property. But no such a case is presented by this record. The one before us is, shortly, this: Four incumbrances were placed by Walker upon the lots in question, in the following order, namely, the Honore mortgage, the Rogers, Rich and Pearce trust deeds. By the *laches* of Wilshire, as already shown, the Honore mortgage became subordinated to the Rogers trust deed, so that the latter became the first instead of the second in the series of securities. Wilshire's loss of priority in neglecting to have the assignment of the Honore mortgage recorded, was a matter of no consequence to appellants, as that occurred before their title accrued, and even if it had not occurred at all, both of those incumbrances would have stood, as they do now, in the way of the Rich and Pearce trust deeds, through which appellants claim. While such were the relations of the parties with respect to the property, the appellants, by their respective cross-bills, sought to enforce their junior liens against the lots. To do this effectually, they were bound to either pay or in some manner defeat the Rogers trust deed and Honore mortgage, both of which stood in their way. This, as we have already seen, they attempted to do, and successfully, too, so far as the

Rogers trust deed or the first lien is concerned. But strange to say, no attempt seems to have been made to get rid of the Honore mortgage, or to have settled the rights of those claiming under it. And now because, while appellants, acting in their own interest, and to accomplish a purpose of their own by doing something they were compelled to do in order to make the trust deeds under which they claim available, they have incidentally benefited appellees, it is insisted that the latter shall lose their interest in the property altogether, or at least shall reimburse appellants the expenses of the litigation. Such a position as this certainly finds no sanction in the law. The result of the litigation, it will be noted, shows that, as against the lots, (the only thing here in dispute,) the claim of Greenbaum & Foreman was an invalid one; that they had funds in their hands belonging to Walker sufficient to pay, and which did pay, all that was justly due under the Rogers trust deed. Had appellees been brought into court, as they should have been, they would have had the same right that appellants had to have the collaterals in Greenbaum & Foreman's hands applied, as they were applied, to the discharge of their claim, without resorting to the lots; but as they were not made parties to that litigation, it was sufficient for them to exercise this right when Greenbaum & Foreman undertook to enforce their claim upon the lots, as against appellees. We regard the present situation of the parties with respect to the property, the same as if Walker, pending the suit, had voluntarily paid the Greenbaum & Foreman claim out of his own pocket. The effect in that case would have been simply to extinguish the first lien upon the property, without at all affecting the priorities or equities between the other lien holders.

This view of the matter substantially disposes of the case adversely to appellants. It would therefore be an unprofitable consumption of time and fruitless labor to enter upon an examination of the remaining subordinate questions discussed in the briefs.

A number of objections are urged against the judgment of foreclosure of the Honore mortgage, and the subsequent proceedings thereunder. While it may be admitted these objections are not groundless, yet we do not think any of the errors and irregularities complained of are of so serious a character as to justify us in holding the whole proceeding void in a collateral proceeding, as this is. Such of the objections as go to the jurisdiction of the court in that proceeding we think are not well founded, and it is clear mere errors and irregularities can be of no avail here. The claim that appellees are barred by the Statute of Limitations we regard as equally untenable.

Without going into further detail, we think, upon the whole case, the decree below is right, and it will therefore be affirmed.

*Decree affirmed.*

Mr. JUSTICE MAGRUDER took no part in the decision of this case.