MAXWELL *v.* HAMMOND.

1. MORTGAGES—MERGER—DEED TO MORTGAGEE DOES NOT EXTINGUISH MORTGAGE PLEDGED AS COLLATERAL WITH THIRD PARTY.

Where a mortgagee of land indorsed the notes which the mortgage secured and assigned the mortgage to a bank as security for an indebtedness, a subsequent deed to him did not operate as a merger so as to extinguish the mortgage in the hands of the bank.[1]

2. SAME—MERGER NOT A RIGID RULE.

Merger is not a rigid rule, unyielding to equities, or declared and enforced regardless of intention or the just rights of third parties.[2]

3. NOVATION—AGREEMENT OF PARTIES NEGATIVED NOVATION.

Where a mortgagee of land, after assignment of the mortgage and notes to a bank to secure his debt, received a deed to the land subject to said mortgage, and thereafter deeded to another subject to the mortgage, and authorized the bank to satisfy the mortgage on payment of his debt to it, and such grantee gave the bank a note which was not intended to be a substitute for the debt

[1]Mortgages, 27 Cyc. p. 1385; [2]Id., 27 Cyc. p. 1378.

secured by the mortgage, an agreement by the bank that, in default of payment of the last note, the original mortgage should be foreclosed for the amount owed by the mortgagee to the bank, was not a novation releasing the mortgagors or the mortgagee.[3]

4. CORPORATIONS—DOING BUSINESS WITHIN STATE — ASSIGNMENT OF MORTGAGE.

   Although a foreign corporation, to carry on business in this State, is required to procure a certificate of authority under Comp. Laws Supp. 1922, § 9053 (164, 166), a foreign corporation not so engaged nor authorized to do so, may take an assignment of a mortgage on land therein.[4]

5. APPEAL AND ERROR — MORTGAGES — FORECLOSURE — PURCHASER UNDER SECOND MORTGAGE MAY NOT COMPLAIN OF DECREE FOR LESS THAN AMOUNT OF FIRST MORTGAGE.

   In a suit for the foreclosure of a first mortgage assigned to a bank as security for the payment of an indebtedness by the mortgagee, a purchaser of the land under foreclosure of a second mortgage could not complain, on appeal, of a decree for plaintiff for the amount due to said bank on said indebtedness, which was less than the amount due on the mortgage.[5]

Appeal from Lenawee; Hart (Burton L.), J.    Submitted January 19, 1926.    (Docket No. 60.)    Decided April 14, 1926.

Bill by Daniel E. Maxwell against Harry H. Hammond and others to foreclose a mortgage.    From a décree for plaintiff, defendant Hammond appeals. Affirmed.

*Baldwin & Alexander* and *Marshall, Melborn, Marlar & Martin,* for plaintiff.

*Charles C. Stewart (John W. L. Hicks,* of counsel), for appellant.

WIEST, J.    This is a suit in equity to foreclose a real estate mortgage.    Defendant Harry H. Ham-

---

[3]Mortgages, 27 Cyc. pp. 1410, 1411; [4]Corporations, 14a C. J. §§ 3979, 3981 (Anno); [5]Appeal and Error, 4 C. J. § 2591.

mond, a subsequent purchaser under foreclosure of a second mortgage, contests on the grounds of merger, novation, and void assignment to a foreign corporation not authorized to transact business in this State, and appealed from a decree granting foreclosure. Facts sufficient to present the several issues will be stated as we proceed.

Merger. The mortgage was given November 6, 1919, by Benjamin J. Zahn and wife to Austin C. Davis, on a 342-acre farm in Lenawee county, to secure three notes aggregating $17,000; one for $1,000, payable August 17, 1921; one for $1,000, payable August 17, 1922, and one for $15,000, payable August 17, 1924. March 11, 1920, Davis indorsed the notes and assigned the mortgage to the Monroe County Bank of Dundee, to secure two notes of his, held by the bank, amounting to $8,500. October 21, 1920, Zahn and wife deeded the farm to Harry R. Shipman, subject to the mortgage. November 22, 1920, Shipman and wife deeded the farm to Austin C. Davis, subject to the mortgage. At the time of the deed to Davis the bank held the mortgage as security for Davis's indebtedness to it. This deed to the mortgagee did not extinguish the mortgage in the hands of the bank. Merger is not a rigid rule, unyielding to equities, or declared and enforced regardless of intention or the just rights of third parties.

Tiffany on Real Property (2d Ed.), vol. 3, p. 2606, states:

"Merger can evidently not occur when the land is conveyed to the mortgagee after he has assigned the debt with its lien to another."

It was held in *Campbell* v. *Vedder*, 1 Abb. Dec. (N. Y.) 295, quoting from the syllabus:

"A conveyance of the equity of redemption in land, to the mortgagee thereof, after he has transferred the mortgage held by him to a third person, as collateral

security for payment of a debt, does not merge the mortgage."

In *Case* v. *Fant,* 53 Fed. 41, it was said:

"The rule is well settled that, where the mortgagee has transferred his mortgage as collateral security for the payment of a debt before his purchase of the equity of redemption, no merger takes place, for the reason that the different estates in such case do not vest in the same person. *Kellogg* v. *Ames,* 41 N. Y. 259; 1 Jones, Mortg. § 870. It would operate as a fraud upon the pledgee of the mortgage to hold that a subsequent conveyance of the equity of redemption to the mortgagee extinguished the mortgage."

See, also, *Curtis* v. *Moore,* 152 N. Y. 159 (46 N. E. 168, 57 Am. St. Rep. 506) ; *Lime Rock Nat. Bank* v. *Mowry,* 66 N. H. 598 (22 Atl. 555, 13 L. R. A. 294) ; *International Bank of Chicago* v. *Wilshire,* 108 Ill. 143.

Novation. March 8, 1922, Davis and wife deeded the farm to Richard Powers, subject to the $17,000 mortgage, which Powers assumed and agreed to pay. March 22, 1922, Powers, a widower, deeded to Jerome Probst and wife, subject to an existing indebtedness of $8,000. This was the Davis indebtedness to the bank and for which the bank held the mortgage as security, $500 having been paid. In dealing for the farm Probst obtained from Davis a letter to the Monroe County Bank, dated March 22, 1922, reading:

"You are hereby authorized to satisfy the seventeen thousand ($17,000) mortgage or assign the same to Jerome Probst, as he may desire upon payment of the eight thousand ($8,000) loan on which you hold this mortgage for security."

Probst did not pay the Davis debt to the bank, but, May 26, 1922, executed and delivered to the bank his note for $7,871.56, due on or before six months, with interest at seven per cent. per annum, and received the following writing from the bank:

"In connection with a certain promissory note this day given by Jerome Probst to the Monroe County Bank of Dundee, Michigan, for the sum of seventy-eight hundred and seventy-one and 56/100 dollars payable to the order of said Monroe County Bank on or before six months after date with interest thereon at the rate of seven per cent. per annum and secured by a certain real estate mortgage and notes for $17,000, made by Benjamin J. Zahn and wife to Austin C. Davis, November 6, 1919, on 342 acres more or less in the township of Raisin, county of Lenawee, and State of Michigan, recorded in the recorder's office of said Lenawee county in liber 207, page 443, and assigned by said Austin C. Davis and wife to said Monroe County Bank by assignment recorded in said Lenawee county in liber 207, page 556, it is agreed that the unpaid balance on said Zahn mortgage and notes secured thereby is exactly the same as the amount of the said note by said Probst, being the sum of seventy-eight hundred seventy-one and 56/100 dollars and that in case of any default in the payment of said Probst note, that said Zahn mortgage and notes shall be foreclosed for the amount then due and owing on said Probst note and further, that upon payment in full of said Probst note with interest, said Monroe County Bank shall assign and deliver said Zahn mortgage and the three notes secured thereby to the said Jerome Probst or his assignee."

This agreement made certain the amount due the bank in case of foreclosure, afforded Probst an opportunity to pay that amount and have an assignment of the mortgage, but was not a novation to the release of Davis or the Zahns. Under the authority of the Davis letter Probst was to satisfy the mortgage, as security, in the hands of the bank by paying the Davis notes. Probst has not paid the Davis notes and February 15, 1923, received back from the bank his note of May 26, 1922. It is clear that the bank released no one, but accepted additional security and finally surrendered that. Even had the bank given up to Probst the Davis notes and accepted the Probst

note in lieu thereof, the mortgage would not have been released.

"Where the mortgagee gives up the notes secured to a purchaser of the mortgaged premises, and takes from such purchaser his own notes, as evidence of the same continuing debt, this does not release or extinguish the mortgage." 2 Jones on Mortgages (7th Ed.), § 925.

And,

"So the question whether or not the taking of a new security of equal dignity is to be treated as a novation or substitution for and an extinguishment of a prior indebtedness is a matter of intention to be determined from all the facts and circumstances of the case. 'A court of equity will keep an incumbrance alive, or consider it extinguished, as will best serve the purposes of justice, and the actual and just intention of the party.'" 2 Jones on Mortgages (7th Ed.), § 926.

Probst did not undertake to pay the Zahn mortgage; at the most he attempted to arrange for satisfaction of the amount due the bank, by his undertaking to pay the Davis debt to the bank, and obtain an assignment of the mortgage. Probst was never entitled to an assignment of the mortgage and his dealings with the bank in no way substituted him as debtor in place of the mortgagors or affected the mortgage and right to foreclose the same. If Probst had paid the Davis debt to the bank he could have had an assignment of the Zahn mortgage, but he did not pay and the mortgage was properly foreclosed for the amount for which it stood pledged as security. There are no appealing equities in behalf of defendant Hammond. The agreement negatives a novation.

Assignment of the Mortgage to a Foreign Corporation. Is an assignment of a mortgage to a foreign corporation, not admitted to transact business in this State, where the assignment is sent to a bank in an-

other State and there payment is made and delivery had, void?    March 15, 1923, the Monroe County Bank assigned the mortgage to the Investment Bond & Mortgage Company of Toledo, Ohio.    This assignment, together with the mortgage notes, was sent to a bank in Toledo to turn over to the assignee upon payment of the amount due the Monroe County Bank, and this amount was paid in Toledo and the papers there delivered.    July 5, 1923, the Investment Bond & Mortgage Company, of Toledo, assigned the mortgage to plaintiff, Daniel Maxwell, a resident of Ohio, who filed the bill herein for foreclosure December 26, 1924.

Counsel for defendant Hammond contends:

"The foreign corporation, not having been domesticated, had no capacity to take title to a mortgage covering Michigan land, and, having no title, could convey none to the plaintiff."

Defendant invokes provisions of the general corporation act of 1921 (Act No. 84), being section 9053 (164), Comp. Laws Supp. 1922:

"It shall be unlawful for any corporation organized under the laws of any State, district or territory of the United States, except the State of Michigan, or of any foreign country, to carry on its business in this State, until it shall have procured from the secretary of State of this State a certificate of authority for that purpose."

And section 9053 (166):

"No foreign corporation shall be capable of making a valid contract in this State until it shall have fully complied with the requirements of the laws of this State with respect thereto, and at the time holds an unrevoked certificate to that effect from the secretary of State."

It is also said that a corporation not qualified by domestication cannot acquire title to real property in

this State, and, therefore, cannot hold by assignment a mortgage upon real estate, situated within this State. The president of the Ohio corporation visited Dundee and made some investigation relative to the mortgage, but the transaction was carried out in Ohio through a bank there. The Ohio corporation was not engaged in purchasing other mortgages in this State. Does this one instance, having in mind all the circumstances, fall within the inhibition of the statute? For the purposes of this case, we will consider the assignment made in pursuance of a Michigan contract. Counsel for defendant cites *Wisconsin Trust Co.* v. *Munday,* 168 Wis. 31 (168 N. W. 393, 169 N. W. 612). That decision rests upon a statute prohibiting unlicensed foreign corporations from acquiring, holding, or disposing of property in that State. We have no such statute. Counsel also calls attention to *Thompson* v. *Waters,* 25 Mich. 214 (12 Am. Rep. 243), where it was held that, under the rule of comity, obtaining among the States, a foreign corporation could take title to lands in this State, and contends that the subsequent legislation, before mentioned, prevents resort now to the rule of comity. We do not think so. If a foreign corporation is to carry on its business in this State, a certificate of authority must be procured. Such is the plain mandate of the statute, but this does not prevent a foreign corporation, not carrying on its business in this State, from taking an assignment of one mortgage on land in this State.

The applicability of the statute, requiring a certificate of authority, and rendering foreign corporations incapable of making valid contracts in this State if not operating under certificate of authority, depends entirely upon whether such corporation is carrying on its business in this State. The statute does not say that no business shall be done in this State by a foreign

corporation except under certificate of authority, but does say that no foreign corporation shall *carry on* its business in this State without such certificate.

In *C. H. Knight-Thearle Co.* v. *Hartline,* 233 Mich. 53, we again approved of the following quotation from *Vaughn Machine Co.* v. *Lighthouse,* 64 N. Y. App. Div. 142 (71 N. Y. Supp. 799) :

"The crucial test in doing business within the meaning of this statute is not an isolated transaction within the State, * * * but it is the establishment of an agency or branch office within our State limits."

This is manifested by the very requirements of the statute. See, also, *Rex Beach Pictures Co.* v. *Garson Productions,* 209 Mich. 692; *Republic Acceptance Corporation* v. *Bennett,* 220 Mich. 249; 9 Fletcher's Cyclopedia Corporations, § 5919; *Penn Collieries Co.* v. *McKcever,* 183 N. Y. 98 (75 N. E. 935, 2 L. R. A. [N. S.] 127) ; *Ammons* v. *Brunswick-Balke-Collender Co.,* 141 Fed. 570; *Gilchrist* v. *Railroad Co.,* 47 Fed. 593.

In *Martin* v. *Bankers' Trust Co.,* 18 Ariz. 55 (156 Pac. 87, Ann. Cas. 1918E, 1240), the suit was to foreclose a deed of trust, held by a foreign corporation without compliance with the statute of Arizona relating to foreign corporations "which shall carry on any business, enterprise or occupation in this State," and it was said in answer to a contention similar to the one advanced in the case at bar:

"Our statute restricts the disqualification to any foreign corporation which shall *carry on* any business, enterprise, or occupation in this State, involving the idea of continuation and repetition of the acts, and it is the act of such a corporation only that is within the purview of the law. There is a marked difference in doing an act of business and carrying on or pursuing a business, enterprise, or occupation in this State."

Citation of authority might be multiplied.

But counsel for defendant thinks there is a difference between isolated commercial transactions and the purchase of a mortgage on land in the State. This attempted distinction is not new and does not bring about any different construction of the statute. We close this subject by quoting from *Keene Guaranty Savings Bank* v. *Lawrence*, 32 Wash. 572, 578 (73 Pac. 680) :

"The purchase by a foreign corporation of a promissory note or a mortgage in a State, with no purpose of doing any other act there, is not a transaction of business within the meaning of the statute requiring every such corporation, before transacting business in the State, to record a certified copy of its articles of incorporation and appoint an agent within the State upon whom process can be served."

But one more point need be mentioned. The decree in the circuit was for the amount due on the Davis notes, and the point is made that, inasmuch as plaintiff never had such notes, he was not entitled to decree. The foreclosure was upon the Zahn notes and mortgage, and the defendant is in no position to complain of a decree reducing the foreclosure amount to the sum due on the Davis notes. The Davis notes were no part of the mortgage. Plaintiff, not having appealed, must rest content with the decree, and defendant Hammond, having no defense, must abide the decree as entered.

The decree in the circuit is affirmed, with costs to plaintiff against defendant Hammond.

SHARPE, SNOW, STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred. BIRD, C. J., did not sit.