FCA PROPERTIES *v.* HUDSON OIL COMPANY
OF UNITED STATES, INC.

1. Contracts—Locus Contractus—Validity—Presumptions.

A contract is presumed to have been made where it was lawful
to make it where there is a question concerning the place the
contract was made, one place conferring validity and the other
place denying validity.

2. Contracts—Locus Contractus—Validity—Presumptions—Evidence.

Evidence would not support a finding that a lease of a Michigan
gas station by a Kansas corporation not authorized to do
business in Michigan was made other than where it was lawful
to make it where the record showed that the holders of the
landlord's interest had first signed the lease in Michigan and
Louisiana, sent the lease to Kansas, where the corporation
signed it, and then the lease was sent from Kansas to Michigan.

3. Corporations—Foreign Corporations—Certificate of Authority—Contracts—Validity—Carrying on Business.

The statutory provision rendering a foreign corporation incapable
of making valid contracts in Michigan if the corporation has
no certificate of authority applies only to a foreign corporation
carrying on its business in this state (MCLA §§ 450.93,
450.95).

4. Corporations—Foreign Corporations—Carrying on Business—Real Property Leases—Preliminary Transaction.

Execution by a foreign corporation, as tenant, of a real property
lease does not constitute doing business or carrying on business
within the state where the property is located, at least

References for Points in Headnotes .

[1] 17 Am Jur 2d, Contracts § 238.
[2] 50 Am Jur 2d, Landlord and Tenant §§ 30–37.
[3] 36 Am Jur 2d, Foreign Corporations § 211.
[4–6] 36 Am Jur 2d, Foreign Corporations §§ 342, 343.
[7] 49 Am Jur 2d, Landlord and Tenant § 374 *et seq.*
[8] 49 Am Jur 2d, Landlord and Tenant §§ 1043, 1044.

where the act of entering into the lease is merely incidental and preliminary to the business in which the corporation was engaged or was about to engage (MCLA §§ 450.93, 450.95).

5. Corporations—Foreign Corporations—Carrying on Business— Real Property Leases.

A foreign corporation was not carrying on its business in this state when it signed, as lessee, a lease for a gas station in Michigan where the corporation's business was the operation of gasoline stations, not the acquisition or ownership of, or trading in, real estate leases (MCLA §§ 450.93, 450.95).

6. Corporations—Foreign Corporations—Contracts—Real Property Leases—Carrying on Business.

A lease entered into, as lessee, by a foreign corporation which did not possess a certificate of authority, did not violate the statute preventing a foreign corporation not qualified to do business in this state from making a valid contract in this state where the lease was entered into as incidental and preliminary to the conduct of other business about to commence for the first time in this state (MCLA §§ 450.93, 450.95).

7. Corporations—Foreign Corporations—Annual Reports—Acceptance—Legal Disability.

A foreign corporation was under no legal disability when it exercised its lease option to purchase a Michigan gas station where the Corporation and Securities Commission had accepted the corporation's previously rejected annual reports before the corporation exercised its option to purchase (MCLA § 450.87).

8. Landlord and Tenant—Use of Leased Premises—Lawful Purpose.

A lease provision requiring the lessee to use the leased premises for a gasoline service station or any other lawful purpose pertained to the functional use of the premises and was not concerned with whether the corporate tenant was, or was not, in good standing with the Corporation and Securities Commission; the corporation's having had its corporate powers suspended and its charter voided for delinquency in filing its annual reports did not violate the "lawful purpose" clause of the lease.

Appeal from Ingham, Richard Robinson, J. Submitted Division 3 October 6, 1970, at Lansing. (Docket No. 8367.) Decided July 23, 1971.

Complaint by FCA Properties, Inc., against Hudson Oil Company of the United States, Inc., for a declaratory judgment voiding a lease with an option to purchase. Hudson Oil counterclaimed for specific performance. Judgment for defendant on the complaint and counterclaim. Plaintiff appeals. Affirmed.

*Foster, Lindemer, Swift & Collins* (by *David C. Coey*), for plaintiff.

*Glassen, Parr, Rhead & McLean,* for defendant.

Before: Levin, P. J., and T. M. Burns and J. E. Hughes,* JJ.

Levin, P. J. The plaintiff, FCA Properties, Inc., owns a gasoline station leased to the defendant, Hudson Oil Company of the United States, Inc. Hudson Oil exercised an option to purchase stated in the lease.

FCA commenced this action seeking a declaration that the lease is void and unenforceable. Hudson Oil filed a counterclaim for specific performance. The trial court entered a judgment finding that the option was valid and enforceable and directing that it be specifically performed by FCA Properties.

Hudson Oil is a Kansas corporation and had not obtained authority to do business in Michigan before the date of the lease, April 24, 1963. A certificate of authority to do business in this state was issued to Hudson Oil on May 22, 1963.

The lease provided that its five-year term would not commence until the necessary permits to build, erect, and operate a gasoline service station on the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

premises had been obtained. The last permit was obtained August 6, 1963.

During the term of the lease Hudson Oil filed annual reports with the Michigan Corporation and Securities Commission. The reports were timely filed but were rejected in three successive years. Several attempts were made to cure the claimed defects and the report for 1964 was finally accepted on January 23, 1967, and the reports for 1965 and 1966 were accepted February 9, 1967.

Thereafter, on February 13, 1967, Hudson Oil exercised the option to purchase and on March 1, 1967, FCA attempted to terminate the lease on the ground that Hudson Oil had violated a provision in the lease stating that Hudson Oil intended "to use the leased premises for a gasoline station, or any other *lawful* purpose". (Emphasis supplied.)

## I.

We consider first FCA's claim that the lease is void because at the time it was entered into Hudson Oil had not yet qualified to do business in Michigan and was, therefore, incapable "of making a valid contract in this State." The quoted words are contained in § 95 of the general corporation act which reads in part as follows:

"No foreign corporation shall be capable of making a valid contract in this State until it shall have fully complied with the requirements of the laws of this State with respect thereto, and at the time holds an unrevoked certificate to that effect from the Michigan corporation and securities commission." MCLA § 450.95 (Stat Ann 1963 Rev § 21.96).

A provision in an earlier corporation act containing substantially the same language was considered by the Michigan Supreme Court in *White-*

*head & Kales Co.* v. *Taan* (1926), 233 Mich 597, 600, 601. The Court declared that, "it is presumed that the contract was made where it was lawful to make it, not in Michigan in violation of law."

It appears that the scrivener who prepared the lease dated it April 24, 1963. It was then circulated for signature by the landlord and the tenant. The property was at the time owned by an individual who lived in Detroit and by a man and his wife who lived in Louisiana. The holders of the landlord's interest signed the lease first, and, thereafter, it was sent to Hudson Oil in Kansas City, Kansas, for signature. Some time on or after May 16, 1963, the lease was signed and transmitted from Kansas to Michigan. The record evidence would not support a finding that the lease was made other than "where it was lawful to make it."

Moreover, at the time the lease was entered into, Hudson Oil was not incapable of making a valid contract in Michigan. Although § 95 by its terms would literally prohibit any foreign corporation from making a valid contract in this state until it has obtained a certificate of authority, this prohibition is ancillary to and enforces the requirement of § 93 of the General Corporation Act making it "unlawful for any foreign corporation to carry on its business in this state, until it shall have procured from the Michigan Corporation and Securities Commission a certificate of authority for that purpose."[1]

The language just quoted, from § 93, and the language previously quoted from § 95 of the General Corporation Act, first appeared in PA 1901, No 206.[2] There have been a number of amendatory

---

[1] MCLA § 450.93 (Stat Ann 1963 Rev § 21.94).

[2] PA 1901, No 206 in relevant part provided:

"Section 1. It shall be unlawful for any corporation organized under the laws of any State of the United States (except the State

acts since 1901, including a pertinent amendment in 1907. The language has remained in substantially the form it took in 1907 until the present (see fn 2). It is clear, despite the reallocation of language among different sections of the corporation laws over the years and some changes of phraseology, that §§ 93 and 95 must be read together as an entirety and that the prohibition against a foreign corporation making a valid contract in this state applies only to a foreign corporation "carry[ing] on its business" in this state.

In *Maxwell* v. *Hammond* (1926), 234 Mich 461, 468, 469, the Michigan Supreme Court declared:

"The applicability of the statute, requiring a certificate of authority, and rendering foreign corporations incapable of making valid contracts in this State if not operating under certificate of authority, *depends entirely upon whether such corporation is carrying on its business in this State.* (Emphasis supplied.) The statute does not say that no business shall be done in this State by a foreign corporation except under certificate of authority, but does say

of Michigan), or of any foreign country, to carry on its business in this State, unless it shall first have filed, * * * .

"No foreign corporation, subject to the provisions of this act, shall maintain any action in this State upon any contract made by it in this State after the taking effect of this act, until it shall have first complied with the requirements of this act, and procured a certificate to that effect from the Secretary of State."

That act was amended by PA 1907, No 310, and the language quoted above, which was all contained in the first section of the 1901 act, was divided among several sections. The first paragraph quoted above was set forth in § 1 of the 1907 act, and the second paragraph was placed in § 6 of the 1907 act, *viz.:*

"Sec. 1. It shall be unlawful for any corporation organized under the laws of any state of the United States, except the State of Michigan, or of any foreign country, to carry on its business in this State, until it shall have procured from the Secretary of State of this State a certificate of authority for that purpose."

"Sec. 6. No foreign corporation, subject to the provisions of this act, shall be capable of making a valid contract in this State until it shall have fully complied with the requirements of this act, and at the time holds an unrevoked certificate to that effect from the Secretary of State."

that no foreign corporation shall *carry on* its business in this State without such certificate." (Emphasis by the Court.)[3]

The *Maxwell* v. *Hammond* Court held that the acceptance by a foreign corporation of an assignment of a mortgage covering Michigan real estate does not constitute the carrying on of business in this state.

The record in this case would not support a finding that at the time the lease was entered into Hudson Oil was carrying on its business in this state. Hudson Oil's business was the operation of gasoline service stations, not the acquisition or ownership of, or trading in, real estate leases.[4] The rule appears to be well established that the execution by a foreign corporation, as tenant, of a lease of real property does not constitute doing business or carrying on business within the state where the property is located, at least where the act of entering into the lease is merely incidental and preliminary to the business in which the corporation is engaged or is about to engage.[5]

There being nothing in the record to support a finding that the lease was entered into other than

[3] Similarly see *Friedlander Bros., Inc.* v. *Deal* (1928), 218 Ala 245, 248 (118 So 508, 511).

[4] *Cf. Walter E. Heller & Company of California* v. *Stephens* (1968), 79 NM 74 (439 P2d 723).

[5] *Neiderhiser* v. *Henry's Drive-In, Inc.* (1964), 96 Ariz 305 (394 P2d 420); *Friedlander Bros., Inc.* v. *Deal, supra; Worcester Felt Pad Corp.* v. *Tucson Airport Authority* (CA9, 1956), 233 F2d 44, 59 ALR2d 1121; 17 Fletcher Cyclopedia Corporations, § 8487, p 634; 36 Am Jur 2d, Foreign Corporations, § 343, p 346.

Anno: Leasing of real estate by foreign corporation, as lessor or lessee, as doing business within state within statutes prescribing conditions of right to do business, 59 ALR2d 1131.

*Cf. Snell* v. *Commissioner of Internal Revenue* (CA5, 1938), 97 F2d 891, 892, where the Court of Appeals for the Fifth Circuit observed that the word "business," "notwithstanding disguise in spelling and pronunciation, means busyness; it implies that one is kept more or less busy, *that the activity is an occupation*". (Emphasis supplied.)

as an act incidental and preliminary to the conduct of other business about to commence for the first time in this state, the lease when made did not violate the statute which prevents a foreign corporation that has not qualified to do business in Michigan from making a valid contract in this state.

(The constitutionality and construction of statutes [i] regulating the transaction by foreign corporations of business within Michigan, and [ii] attaching particular consequences to the transaction by non-domiciliaries of business within the state present different questions; different considerations of constitutional law and public policy are involved in their resolution. Therefore, cases construing long-arm statutes are not in point.)

## II.

We now turn to FCA's argument based on the rejection by the Michigan Corporation and Securities Commission of annual reports filed by Hudson Oil. FCA relies on *Berry Door Corporation* v. *Tom McDonnell, Inc.* (1953), 336 Mich 177. In that case, the Michigan Supreme Court ruled that a corporation whose annual report was not accepted and which did not respond to communications from the Corporation and Securities Commission could not, during the period of default, validly exercise an option to renew in a lease because, under the provisions of § 87 of the General Corporation Act, the corporate powers of a delinquent corporation are suspended "until it shall file such report, and it shall not maintain any action or suit in any court of this state upon any contract entered into during the time of such default".[6]

---

[6] MCLA § 450.87 (Stat Ann 1963 Rev § 21.87).

In this case we need not consider whether Hudson Oil's attempts to cure the claimed defects in its reports constituted a "good-faith attempt to comply with the law",[7] relieving it of such consequences of suspension. The reports filed by Hudson Oil were accepted before it exercised the option to purchase and under another statute, providing for the revival of the charters of delinquent corporations whose charters have become void for failure to file annual reports for two consecutive years,[8] upon the acceptance and filing of the reports and payment of fees and penalties "the voidance of the charter of the corporation shall be waived and it shall be revived in full force and effect".[9]

When Hudson Oil exercised the option it was under no disability by reason of any prior delinquency in the filing of its annual reports.[10]

Nor do we find merit in the contention that Hudson Oil's delinquency in the filing of its annual reports and the consequent suspension of its powers and later voiding of its charter violated the provision in the lease stating that Hudson Oil intends to use the leased premises for a gasoline service station "or any other lawful purpose." The lease provision pertains to the functional use of the premises; it is not concerned with whether the tenant is or is not in good standing with the Corporation and Securities Commission. To the extent that *American Legion Holding Corporation* v. *Hurowitz*

---

[7] See *Berry Door Corporation* v. *Tom McDonnell, Inc.* (1953), 336 Mich 177, 186; *L. J. Barry Coal Co.* v. *Houghten* (1937), 282 Mich 547, 551; *R. C. Mahon Co.* v. *Molin* (1930), 252 Mich 606, 613; *Southfield Company* v. *Christensen* (1943), 305 Mich 656, 659. Contrast *Radio Electronics Supply Company* v. *Smith* (1964), 372 Mich 393, 395.

[8] MCLA § 450.91 (Stat Ann 1963 Rev § 21.91).

[9] MCLA § 450.431 (Stat Ann 1971 Cum Supp § 21.248[1]).

[10] *Cf. Vlasic Foods Company* v. *Russek* (1969), 382 Mich 544, 553, per ADAMS, J.

(1947), 72 SD 89 (30 NW2d 9), supports a different conclusion, we decline to follow it.[11]

Affirmed.   Costs to defendant.

All concurred.

___

[11] In the cited case the tenant conducted a grocery business under a fictitious name without filing a statement required by the statute. This was held to violate the tenant's covenant that he would use the premises as a "store" and not for "any unlawful business or purpose", and to authorize the landlord to dispossess the tenant.