WISCONSIN TRUST COMPANY and another, Respondents, vs.
MUNDAY and others, Appellants.   [No. 1.]

MUNDAY and others, Appellants, vs. WALTER and others,
Respondents.   [No. 2.]

*April 5—October 8, 1918.*

*Foreign corporations: Right to acquire property in this state:
Interstate commerce: Conveyances wholly void: Validation:
Statutes construed: Public policy: Annulment of deed at suit
of grantor: Estoppel: Ratification: Covenants of warranty:
Mortgage by grantee corporation: Ordinary care by mort-
gagee as to title: Constitutional law: Delegation of legislative
power: Option to enforce contract: Impairing obligation of
contracts: Privileges and immunities: Cancellation of con-
veyances: Return of consideration.*

1. Sec. 1770*b*, Stats., prohibiting unlicensed foreign corporations
   (with certain exceptions) from transacting business or ac-
   quiring, holding, or disposing of property in this state, applies
   not only to bilateral and executory contracts, but also to
   executed contracts and unilateral instruments of transfer,
   including deeds or conveyances of land in Wisconsin given
   pursuant to antecedent contracts, written or oral.
2. Conveyances in February, 1913, of real property located in
   this state to a foreign corporation which had not complied
   with sec. 1770*b*, Stats. 1911, were absolutely and wholly void
   as to said corporation and its grantees, even though the
   deeds were given pursuant to and as part of a contract ne-
   gotiated and executed by the parties outside of this state, and
   as a part of the transaction the Wisconsin owner of the real
   estate received shares of stock in said foreign corporation.
3. The contract in such case was not one relating to interstate
   commerce, since that implies as a necessary element the trans-
   portation of goods between states.
4. Compliance with the statute by the grantee corporation in 1915
   did not validate such deeds executed in 1913. [What effect, if
   any, the enactment of ch. 212, Laws 1913, amending sec.
   1770*j*, Stats., had as to title attempted to be conveyed to cor-
   porations which complied with sec. 1770*b* after the enact-
   ment of said sec. 1770*j* (by ch. 142, Laws 1911) and prior
   to the passage of said ch. 212, Laws 1913, is not determined.]
5. By the enactment of ch. 211, Laws 1917, sec. 1 of which
   amends sub. 2, sec. 1770*b*, and sub. 1, sec. 1770*j*, the legis-
   lature intended only to exempt from the provisions of sec.

*1770b* "corporations not organized or conducted for profit," and to confirm and validate titles theretofore attempted to be acquired by exempted corporations. The words "before the passage of this section," having been a part of sec. *1770j* as originally created (by ch. 142, Laws 1911), refer, when repeated in the amended section, to the original enactment of said sec. *1770j*, and not to the passage of sec. 1 of the amending act of 1917. VINJE, KERWIN, and ESCHWEILER, JJ., dissent.

6. By the repetition of language in an amending statute which provides that the original section shall be "amended to read as follows," such repeated language is not repealed and re-enacted, but remains in force as of the time of the original enactment, in the absence of a clearly expressed legislative intent to the contrary.

7. Sec. *1770b*, Stats., is a declaration of a public policy of this state, its purpose being to compel foreign corporations to comply with its terms before transacting business in the state or attempting to acquire or hold property situated within the state. Annulment or cancellation of contracts which are void under that section is therefore not a matter of purely private or personal interest, and will not be denied merely upon the ground that it would be inequitable or that the party seeking such relief is estopped to claim the benefit of the statute. So *held* in a case where, pursuant to a contract between the parties, real property located in Wisconsin was conveyed by the Wisconsin owner, with special covenant of warranty as against any person claiming through or under him, to a foreign corporation which had not complied with said sec. *1770b*, and as part of the transaction the grantor became a stockholder in said corporation and then, with full knowledge that the corporation was about to deal with the title to the property conveyed, stood by and permitted the title to be pledged for money borrowed.

8. A covenant of warranty contained in a deed made void by sec. *1770b*, Stats., cannot be held to be a ratification of the making of the deed itself, nor to be an election to affirm, and a validation of, a contract the making of which and the execution and delivery of the deed constituted a single transaction, especially where, as in this case, the grantors thereafter moved with promptness to assert the invalidity of the deed and to recover the property conveyed.

9. The fact that the transaction by which real property in Wisconsin was conveyed to a foreign corporation contemplated that it should be conveyed by such corporation (a dealer in real estate) to others, is not significant upon the question of the validity of the conveyance under sec. *1770b*, Stats.,—the

purpose of every conveyance being to enable the grantee to deal with the property as his own.

10. The creation of sec. 1770*j*, Stats., by ch. 142, Laws 1911, granting relief to corporations which had inadvertently or mistakenly supposed that sec. 1770*b* was not applicable to their particular situation but which had complied with its provisions prior to the passage of said ch. 142, did not indicate a purpose to change the legislative policy of the state or to relieve foreign corporations thereafter transacting business or acquiring property within this state from complying with said sec. 1770*b*.

11. Conveyances of real property located in this state to a foreign corporation which had not complied with sec. 1770*b*, Stats., and which was not relieved from its disability by sec. 1770*j*, being void and not voidable only, it is immaterial whether or not persons subsequently loaning money upon the faith of such conveyances failed to exercise ordinary care with respect to the ownership of the property.

12. Under the provision in sub. 10 of sec. 1770*b*, Stats., to the effect that every contract made by a foreign corporation in violation of that section, when affecting its personal liability or relating to property within this state, "shall be wholly void on its behalf and on behalf of its assigns, but shall be enforceable against it or them," the contract does not become void or not at the election of the other party, but, so far as it is a contract in favor of or on behalf of the offending corporation, is expressly made void by the terms of the statute; and the statute is therefore not unconstitutional on the ground that it delegates to a private individual the legislative power to impose or not, at his election, a penalty for the doing of the prohibited act. *Duluth M. Co. v. Clancy,* 139 Wis. 189, 194; *Hanna v. Kelsey R. Co.* 145 Wis. 276; and *Lanz-Owen & Co. v. Garage E. M. Co.* 151 Wis. 555, explained.

13. As construed by this court secs. 1770*b* and 1770*j*, Stats., are valid. They do not infringe upon any rights, privileges, or immunities granted by the federal or state constitution, do not impair the obligation of contracts, and do not contravene any provision in either of said constitutions.

14. Upon canceling, as void under sec. 1770*b*, Stats., conveyances of real property in Wisconsin to a foreign corporation which afterwards, through another person, mortgaged its interest in the premises to a bank, the consideration received by the Wisconsin owner for the property is *held,* in equity and good conscience, to belong to the bank.

ESCHWEILER, KERWIN, and VINJE, JJ., dissent in part.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Modified and affirmed.*

There were originally two actions begun. The action here designated No. 1 was instituted by the *Wisconsin Trust Company* and *Frederick Robinson,* hereinafter called plaintiffs, to cancel, rescind, and set aside two separate deeds given by each to the *Realty Realization Company,* all dated and delivered February 28, 1913, pursuant to the contract between said parties, in which contract Clinton S. Woolfolk, president of the *Realty Realization Company,* joined as party of the third part, and also to cancel a deed given by said *Realty Realization Company* to the defendant *Horace E. Walter,* dated March 5, 1913, and a trust deed or mortgage given by *Horace E. Walter* to *C. B. Munday,* trustee, dated March 5, 1913, to secure *Walter's* note for $50,000. upon the security· of which there was loaned by the defendant *La Salle Street Trust & Savings Bank* the sum of $40,000, and to revest the title to the premises described in all the foregoing instruments in the *Wisconsin Trust Company* and *Robinson* free of all claims of the defendants therein.

The action designated No. 2 herein was instituted December 24, 1913, by the plaintiff *Munday* as trustee and the *La Salle Street Trust & Savings Bank* to foreclose the trust deed described above as a mortgage upon the premises pledged to secure said loan of $40,000 made by said bank to said Clinton S. Woolfolk, president of the *Realty Realization Company,* evidenced by the note of *Horace E. Walter,* dated March 6, 1913, for $50,000. The premises described are a lot and five-story brick office and store building thereon located in the city of Racine, Wisconsin, and worth between $60,000 and $75,000.

The actions by stipulation were tried as one. The plaintiff *Robinson* claimed that he was induced to enter into the contract of February 28, 1913, and to execute his deed and

to procure the execution of the deed of the *Wisconsin Trust Company* pursuant thereto by fraud; that the deed to *Walter* and the trust deed from *Walter* to *Munday* were given for the purpose of defrauding the plaintiffs and hindering and delaying them in the recovery of the premises. This claim was practically abandoned upon the trial and is expressly abandoned in the briefs of counsel filed here, and will not be considered other than as it may bear upon the question of whether or not the conveyances made by the plaintiffs to the *Realty Realization Company* are void.

Plaintiffs further claim that the deeds given by them to the *Realty Realization Company* were absolutely void, because the *Realty Realization Company*, being a corporation organized under the laws of the state of Maine, had not complied with sec. 1770*b*, Stats.; that no title passed to said *Realty Realization Company* and it could therefore convey none to *Walter;* that *Walter,* not having any title as against the plaintiffs, could not give a valid mortgage to *Munday,* and that the defendants could not acquire any rights in the property by virtue of the subsequent transactions superior to the rights of the *Wisconsin Trust Company* and *Robinson.* On behalf of *Munday,* the *Bank,* and *Niblack,* receiver, hereinafter called appellants, it was claimed that there was no fraud; that sec. 1770*b*, Stats., had no application to the transaction because it was entirely negotiated and executed at Chicago, Illinois; that appellant *Munday,* trustee, being an individual, and the *La Salle Street Trust & Savings Bank* were expressly excepted from sec. 1770*b*, Stats., with reference to the loan; that said transaction having been negotiated and consummated long after the passage of sec. 1770*j*, Stats., the original transaction, if the statute had any application to executed contracts and unilateral instruments of transfer, was voidable only on a proper case made and not absolutely void; that the subject matter being property not within the state of Illinois, the Illinois foreign corporation law had no application to the transaction be-

tween the original parties; that the *Trust Company* and *Robinson* by the contracts and deeds in effect agreed that all persons claiming under the *Realty Realization Company,* including appellants, could not avoid the transaction and are estopped thereby from so doing; that the plaintiffs ratified and confirmed the contract of February 28, 1913, and their deeds given pursuant thereto; that *Robinson,* the owner of the entire equitable title and interest in the premises, having placed the title in the control of the *Realty Realization Company,* a dealer in real estate, with knowledge that said property would be used by the latter in its business, was and is estopped and precluded from questioning the subsequent dealings by that company with said property, to the prejudice of the rights therein acquired by appellants.

There was a trial by the court, and the court found that the *Realty Realization Company* was guilty of fraud in the procurement of the contract and conveyances to it, but did not connect the appellants therewith; that the *Bank* loaned $40,000 on the trust deed for which it issued its certificates of deposit, and that no part of the loan had been repaid; that Woolfolk discounted the certificates of deposit received by him on account of the loan on March 18, 1913, with James H. Prentiss and used part of the proceeds for the benefit of the *Realty Realization Company,* the balance being unaccounted for; that said certificates at or prior to the maturity thereof were paid by the *Bank* to the holders who discounted the same for the said Clinton S. Woolfolk; that prior to the making of said loan the *Realty Realization Company* and Woolfolk were well known to the *Bank* and *Munday* and were depositors therein; that appellants *Munday* and the *Bank* were warned and put upon inquiry, by the recitals contained in the deeds to the effect that the *Realty Realization Company* was a body corporate of the state of Maine, as to whether said company had complied with sec. 1770*b,* Stats., and that said appellants had failed to exercise ordinary care and prudence to ascertain whether

said company had complied with the laws of Wisconsin, and that the *Wisconsin Trust Company* and *Robinson* had no knowledge that said company had failed to comply with sec. 1770*b* until on or about March 30, 1913.

As conclusions of law the court found that the contract between *Robinson* and the *Realty Realization Company* and the deeds from the *Trust Company* and *Robinson* to the *Realty Realization Company* pursuant thereto were and are wholly null and void; that the *Realty Realization Company* secured no title thereby, conveyed none to *Walter*, and that *Walter's* trust deed to *Munday* was and is a nullity; that *Munday* and the *Bank* were and are chargeable with notice and knowledge of the invalidity of the title claimed by and through the *Realty Realization Company*, and that *Robinson* and the *Trust Company* are not estopped by any act or conduct on their part from asserting their title to said premises as against any of the other parties thereto; that the receiver of said *Bank*, by virtue of said trust deed and the loan made thereon by said *Bank*, acquired no lien on the premises and no right to be subrogated to the *Realty Realization Company;* that *F. M. McKey*, trustee in bankruptcy of the *Realty Realization Company*, was entitled to the return of the consideration received from said company by *Robinson* for said conveyances; that plaintiffs were entitled to judgment for the relief prayed for in their complaint in action No. 1, and in action No. 2 to judgment dismissing on the merits appellants' complaint for foreclosure, vacating and setting aside the trust deed and removing same of record as clouds on their title, and quieting their title to the premises, and for costs. Judgment was entered accordingly. *Munday, La Salle Street Trust & Savings Bank,* and *Niblack* as receiver appeal from the entire judgment. The appellants took proper exceptions to the findings made, and made proper requests for other findings and assignments of error necessary to raise all the questions hereinafter considered. The case was thoroughly tried and ably presented

both in this court and in the trial court. We shall not attempt a detailed statement of all the facts, as the record is a long one and it is not thought necessary in view of the disposition which we make of this case.

For the appellants there were briefs by *Thompson, Myers & Kearney* of Racine, attorneys, and *Joseph W. Moses* of Chicago and *Thomas M. Kearney* of Milwaukee, of counsel, and a supplemental brief by *Thomas M. Kearney*, of counsel; and the cause was argued orally by *Mr. Moses* and *Mr. Thomas M. Kearney*.

For the respondents *Wisconsin Trust Company* and *Frederick Robinson* there was a brief by *Simmons & Walker* of Racine, attorneys; and *William E. Black* of Milwaukee, of counsel, and oral argument by *Mr. Black* and *Mr. John B. Simmons*.

For the respondents *F. M. McKey*, trustee in bankruptcy, and the *Realty Realization Company* there was a brief by *Hand & Quinn* of Racine, and oral argument by *E. B. Hand*.

The following opinions were filed June 19, 1918:

ROSENBERRY, J. The deeds given by the plaintiffs to the *Realty Realization Company* were dated and delivered February 28, 1913, at which time the *Realty Realization Company* admittedly had not complied with the provisions of sec. 1770b, Stats. It is claimed that the failure of the *Realty Realization Company* to comply with the provisions of sec. 1770b does not render the deeds absolutely void, for three reasons: (1) The business was not transacted in Wisconsin; (2) the transaction was interstate in character; and (3) the statute applies only to bilateral and executory agreements and does not apply to executed contracts.

Sec. 1770b has been considered in a series of cases beginning with *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 89 N. W. 904, and ending with *Phœnix N. Co. v. Trostel,* 166 Wis. 215, 164 N. W. 995. No useful purpose would be served by again reviewing these cases.

Certainly the deeds in question are within the terms of this statute, for they clearly relate to property within this state. In the consideration of this case we regard as immaterial the fact that the contract was negotiated in the state of Illinois. No matter where negotiated it was a transaction relating to property within this state, and under familiar principles its validity must be determined in accordance with the laws of this state. But it is claimed that because the business was transacted in the state of Illinois it is interstate in character because, as a part of the transaction, the Wisconsin owner of the real estate in question received fifty shares of the common stock of the Maine corporation and by the terms of the contract was to receive 700 shares of the preferred stock of the corporation; that the law of Wisconsin can have no extraterritorial effect, and therefore cannot operate upon transactions negotiated and made outside of the state of Wisconsin.

It is true that the provisions of sec. 1770b do not apply to such contracts as relate to interstate commerce. Interstate commerce has as a necessary element the transportation of goods between states. We see no circumstances connected with this transaction from which it may be inferred that it was interstate in character, as that term is used in the law relating to interstate commerce.

*Beaser v. Barber A. P. Co.* 120 Wis. 599, 98 N. W. 525, and *Laun v. Pac. Mut. L. Ins. Co.* 131 Wis. 555, 111 N. W. 660, are cited as sustaining the proposition that sec. 1770b applies only to bilateral contracts and does not operate upon executed contracts. A large number of cases from foreign jurisdictions are also cited to the same effect. This question, it seems to us, is clearly determined adversely to the appellants by the prior decisions of this court to which we must adhere. *Hanna v. Kelsey R. Co.* 145 Wis. 276, 129 N. W. 1080. Nearly every deed or conveyance is given pursuant to an antecedent contract, written or oral, and if the statute should be held not to apply to a deed given in performance of such antecedent contract its purpose would

be defeated. While the statute is in many respects a harsh one, it has nevertheless been upheld repeatedly by this court and thereafter reconsidered by the legislature in some of its aspects and no change has been made to avoid or modify the interpretation placed upon it by the court.

In *Hanna v. Kelsey R. Co.* 145 Wis. 276, 129 N. W. 1080, the statute was expressly held to apply to the conveyance of land in this state to a foreign corporation, and in this case it was also expressly held that a conveyance to a foreign corporation which had not complied with sec. 1770*b* was absolutely void and not merely voidable. Upon the authority of the prior decisions of this court we must hold that the deeds given by the *Wisconsin Trust Company* and *Frederick Robinson* to the *Realty Realization Company* are absolutely and wholly void as to the *Realty Realization Company* and its grantees; that no title was conveyed thereby to the *Realty Realization Company,* and that the subsequent deeds given are without legal force or effect, unless (1) the title to premises is confirmed in appellants by sec. 1770*j*, Stats., as amended by ch. 211, Laws 1917, or (2) unless plaintiffs are estopped to claim the benefit of sec. 1770*b*. It is undisputed that on February 28, 1913, *Robinson* entered into a contract with the *Realty Realization Company,* party of the second part, and Clinton S. Woolfolk, party of the third part, by the terms of which *Robinson* agreed to procure from the *Wisconsin Trust Company* a conveyance of the premises in question to the *Realty Realization Company,* in consideration for which the *Realty Realization Company* was to pay the sum of $75,000, $5,000 in cash upon delivery of the deeds, and the balance according to the terms of six promissory notes, the payment of which was to be secured by the deposit of preferred stock of the *Realty Realization Company* as collateral security. The contract also gave to *Robinson* an option to purchase certain stock of the *Realty Realization Company* within the time and upon the terms therein specified, and included other details

of the transaction. This contract was delivered on February 28, 1913, the deeds in question being delivered at the same time as part of the same transaction. The *Realty Realization Company* had at that time not complied with the provisions of sec. 1770*b*, but on October 5, 1915, it did comply with the terms of said section and was duly licensed and authorized to transact business and to acquire and hold property within this state. That part of sec. 1770*b* material here is as follows:

"2. No corporation, incorporated or organized otherwise than under the laws of this state, except railroad corporations, corporations or associations created solely for religious or charitable purposes, insurance companies and fraternal or beneficiary corporations, societies, orders and associations furnishing life or casualty insurance or indemnity upon the mutual or assessment plan, shall transact business or acquire, hold, or dispose of property in this state until such corporation shall have caused to be filed in the office of the secretary of state a copy of its charter, articles of association or incorporation and all amendments thereto duly certified by the secretary of state of the state wherein the corporation was organized. . . . Nothing in this section shall be construed to prevent foreign corporations from taking or holding mortgages or trust deeds on property in this state to secure payment of money loaned or advanced. Mortgages or trust deeds heretofore taken by foreign corporations to secure the payment of money loaned or advanced are hereby declared valid." [Sub. 2, sec. 1770*b*, Stats. 1911.]

". . . Every contract made by or on behalf of any such foreign corporation, affecting the personal liability thereof or relating to property within this state, before it shall have complied with the provisions of this section, shall be wholly void on its behalf and on behalf of its assigns, but shall be enforceable against it or them." [Sub. 10, sec. 1770*b*, Stats. 1911.]

It having been held in *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 89 N. W. 904, and other cases, notably *Hanna v. Kelsey R. Co.* 145 Wis. 276, 129 N. W. 1080, that contracts entered into with foreign corporations which had not

complied with sec. 1770*b* were wholly void and not voidable, there was enacted ch. 142, Laws 1911, which took effect May 13, 1911, the material parts of which are as follows:

"Section 1. There is added to the statutes a new section to read: Section 1770*j*. 1. Any corporation organized otherwise than under the laws of this state, having acquired, or attempted to acquire, legal title by deed, or lease to any real property in this state, before complying with the terms of sec. 1770*b* of the statutes, or acts amendatory thereof and which has thereafter, and before the passage of this act, complied with said section, shall be and is hereby re-lieved from any disability provided in said statute or prohibi-tion therein contained, so far as said section relates to the acquisition and holding of the property so acquired, or at-tempted to be acquired.

"2. Any person claiming that the legal title of any cor-poration or of any person claiming by, through, or under such corporation, to any real property acquired, or attempted to be acquired, is invalid by reason of the failure of any corporation coming within the terms of subsection 1 of this act, to comply with section 1770*b* of the statutes, or acts amendatory thereof, shall commence action to recover the property, or to declare the legal title of said corpora-tion void, or interpose a defense on such grounds, within one year from the passage and publication of this act, and in case of failure to do so his right of action or defense, based upon the failure to comply with said section by any such corporation, shall be deemed to have expired; provided that this act shall not affect any action now pending."

Section 1770*j* as enacted by ch. 142, Laws 1911, was amended by ch. 212, Laws 1913. We do not determine in this case what effect, if any, the enactment of ch. 212, Laws 1913, had as to title attempted to be conveyed to corpora-tions which complied with sec. 1770*b* after the passage of ch. 142, Laws 1911, and prior to the enactment of ch. 212, Laws 1913. Manifestly ch. 212, Laws 1913, could not op-erate to validate the contract and deeds in question in this case, as the *Realty Realization Company* had not complied with the provisions of sec. 1770*b* prior to the passage of ch. 212. After the case had been tried and while it was still

Wisconsin Trust Co. v. Munday, 168 Wis. 31.

under advisement and undecided, secs. 1770*b* and 1770*j* were amended by the enactment of ch. 211, Laws 1917. Said sections as amended by ch. 211 are as follows, that part incorporated by the enactment of ch. 211 being italicized:

"Section 1. Subsection 2 of section 1770*b* and subsection 1 of section 1770*j* of the statutes are amended to read: (Section 1770*b*) 2. No corporation, incorporated or organized otherwise than under the laws of this state, except railroad corporations, corporations or associations created solely for religious or charitable purposes, insurance companies and fraternal or beneficiary corporations, societies, orders and associations furnishing life or casualty insurance or indemnity upon the mutual or assessment plan, *or corporations not organized or conducted for profit,* shall transact business or acquire, hold, or dispose of property in this state until such corporation shall have caused to be filed in the office of the secretary of state a copy of its charter, articles of association or incorporation and all amendments thereto duly certified by the secretary of state of the state wherein the corporation was organized . . . and provided, further, that except as regards the advancing and loaning of money and the taking, acquiring, holding and enforcing of securities as above provided, nothing herein contained shall be construed as authorizing any foreign corporation to transact in this state the business of a bank or trust company, or otherwise to exempt any foreign corporation (other than the railroad, religious, charitable and insurance corporations *and corporations not organized or conducted for profit* above specified) from the provisions of this section or other statutes of this state. Nothing in this section contained shall affect the rights of parties in any action which may now be pending.

"(Section 1770*j*) 1. Any corporation organized otherwise than under the laws of this state, having acquired, or attempted to acquire, legal title by deed, or lease to any real property in this state, before complying with the terms of section 1770*b* of the statutes, *and which is now not required to comply with said section or* which has thereafter, and before the passage of this section, complied with said section, shall be and is hereby relieved from any disability pro-

vided in said statute or prohibition therein contained, so far as said section relates to the acquisition and holding of the property so acquired, or attempted to be acquired, and the title so acquired, or attempted to be acquired, is hereby confirmed."

The appellants claim that by the enactment of ch. 211, Laws 1917, the title of the *Realty Realization Company* and its grantees to the property in question was confirmed and validated. The plaintiffs claim that the enactment of said law did not affect the situation, for the reason that the *Realty Realization Company* is not within the terms of said chapter. Ch. 211, Laws 1917, consisted of two sections; the first incorporated the provisions of secs. 1770*b* and 1770*j* as amended and the second provided when the act should take effect.

The controversy turns upon what is meant by the language used in that part of the first section amending sec. 1770*j* as follows:

"Any corporation organized otherwise than under the laws of this state, having acquired, or attempted to acquire, legal title by deed, or lease to any real property in this state, before complying with the terms of section 1770*b* of the statutes, and which is now not required to comply with said section or which has thereafter, and *before the passage of this section,* complied with said section, shall be and is hereby relieved," etc.

Do the words "before the passage of this section" refer to sec. 1 of ch. 211, Laws 1917, or do they refer to the passage of sec. 1770*j?* In other words, did the legislature intend by the enactment of ch. 211, Laws 1917, to confirm and validate all titles attempted to be acquired by foreign corporations prior to the enactment of sec. 1 of that act, or did it intend by the amendment to sec. 1770*b* and the first subsection of sec. 1770*j* to exempt "corporations not organized or conducted for profit" from the provisions of sec. 1770*b* and to confirm the titles attempted to be acquired by a corporation "which is now not required to comply with said section"?

In determining this question we must search for the intention of the legislature, and if that be ascertained it is our duty to give it effect within established rules. In ascertaining the legislative intention there is one consideration which we think is of controlling force in this case: If the legislature had intended by the re-enactment of sub. 1 of sec. 1770*j* to confirm and validate the title theretofore attempted to be acquired by all foreign corporations which had not complied with sec. 1770*b*, it could have had no object in amending sec. 1770*j*, because the words "any corporation organized otherwise than under the laws of this state" would include "corporations not organized or conducted for profit," which were exempted from compliance with sec. 1770*b* by the enactment of ch. 211. Therefore the insertion of the words in sec. 1770*j*, "which is now not required to comply with said section," would be superfluous, because such corporations would be properly described in the first part of sub. 1 of sec. 1770*j*. As used in sec. 1770*j* we think the words "this section" in the phrase "and before the passage of this section," refer to the enactment of sec. 1770*j* and not to sec. 1 of ch. 211. *Dallmann v. Dallmann,* 159 Wis. 480, 149 N. W. 137. The re-enactment of sec. 1770*j* for the purpose of admitting a new class of corporations, to wit, that "which is now not required to comply with said section," did not and was not intended to bring within the provisions of that section all corporations which had complied with the law subsequent to the passage of ch. 142, Laws 1911, which created and enacted sec. 1770*j*. The words "before the passage of this section" are not a part of the amendment, but are a part of sec. 1770*j* as it was originally created. The repetition of language in an amending statute which provides that the original section shall be "amended to read as follows," does not repeal and re-enact the repeated language, but the repeated part remains in force as of the time of the original enactment, in the absence of a clearly expressed legislative intent to the contrary.

The *Realty Realization Company* was admittedly not "a corporation not organized or conducted for profit," as that term is used in sec. 1770*b*, and therefore is not exempted from complying with sec. 1770*b* and is not included within the language "which is now not required to comply with said section." As stated before, we do not determine the effect of the enactment of ch. 212, Laws 1913, but in arriving at the conclusion stated above we have carefully considered the arguments based on the terms of that statute as indicating the intent and purpose of the legislature in the re-enactment from time to time of sec. 1770*j*.

Because the title attempted to be acquired by the deeds delivered February 28, 1913, was not confirmed and validated by the enactment of ch. 211, Laws 1917, we think the conclusion of the trial court that said deeds were void and conveyed no title is correct and should be affirmed.

Appellants claim that plaintiffs are estopped to claim the benefits of sec. 1770*b*. It is admitted that the *Wisconsin Trust Company* was a bare trustee; that *Robinson* had the right to direct a conveyance of the property at such time and upon such terms and conditions as he chose. The claim of estoppel is based upon the following propositions: (1) The right to annul a contract made with a foreign corporation which has not complied with sec. 1770*b* is a purely personal right as to which no question of public interest attaches; (2) the right claimed by *Robinson,* being purely personal in character, will not be enforced if such enforcement would be inequitable; (3) *Robinson* is estopped by the character, form, and conditions of the contract and deeds involved herein from having the remedy he seeks; (4) *Robinson* is estopped from avoiding the transactions in this case by reason of the fact that by the transaction he became and was a stockholder of the *Realty Realization Company;* (5) *Robinson* should be estopped because, as a stockholder of the *Realty Realization Company* with full knowledge that his grantee was about to deal with the title to the prop-

erty conveyed, he stood by without concern and permitted the title to be pledged for the debt admittedly owing to *C. B. Munday* as trustee for the *Bank*.

It cannot fairly be said that no question of public policy is involved in the determination of this question. It is clear that sec. 1770*b* is a declaration of a public policy of this state with reference to the transaction of business within the state by a foreign corporation. If we permit the provisions of that law to be whittled away and diminished from time to time in order to give effect to private rights, the whole legislative purpose will be defeated. While it has been said in *Mortenson v. Murphy,* 153 Wis. 389, 141 N. W. 273, that the person there referred to "did not want to take advantage of a technicality which would permit him to sell the premises a second time, and he deeded to the bank, the then holder of the mortgage, for the apparent purpose of validating the attempted transfer of the property by the corporation," and in *Bennington Co. Sav. Bank v. Lowry,* 160 Wis. 659, 662, 152 N. W. 463, that "a party has no vested right in a defense based upon an informality not affecting his substantial equities," it does not follow from the language of these decisions that no matter of public interest is involved in a case such as the one before us. If we apply to situations such as the one presented here the doctrine of estoppel contended for by appellants, the whole statute would be practically avoided. We have already set out the terms of the contract pursuant to which the deeds in question were issued, and it is admitted that the contract was fully performed, and that pursuant to the terms of said contract *Robinson* directed the *Trust Company* to convey the property to the *Realty Realization Company;* that pursuant to such direction the *Trust Company* acknowledged its deed made under the authority recited; that the deed contained a special covenant of warranty as against all persons claiming under the *Trust Company;* that *Robinson* and wife made their deed confirming the title conveyed to the *Trust Com-*

*pany,* in which they included a special covenant of warranty as against any person claiming through or under them, said deeds being in the usual form and the covenants running in each instance to the grantee, its successors and assigns; that as a part of the transaction *Robinson* secured the guaranty of Woolfolk to the notes given for part of the purchase price; and it is claimed that by the making and delivery of the deeds *Robinson* elected to affirm the contract and validated it within the provisions of sec. 1770*b,* and he cannot now be permitted to claim to the contrary.

As has been pointed out, practically speaking every deed is made and delivered in execution of some prior oral or written contract. Besides that, in this case it clearly appears that the making of the contract and the execution and delivery of the deeds, the payment of the money, and the execution of the notes constituted a single transaction. How can it be said that the covenants of warranty contained in the very instrument made void are or can be a ratification of the making of the deed itself?

The delivery took place on February 28, 1913; Woolfolk died suddenly on March 28, 1913, and on that day notices were served by *Robinson* asserting the invalidity of the conveyances on the ground that the *Realty Realization Company* had failed to comply with sec. 1770*b,* and on March 31st a second notice signed by *Robinson* and the *Wisconsin Trust Company* was placed of record in the office of the register of deeds of Racine county, and on March 31st an action of ejectment was brought against *Horace E. Walter,* holder of the title as it then stood of record. The plaintiffs moved with commendable promptness.

While it is true that the transaction contemplated that the property attempted to be conveyed should be reconveyed by the *Realty Realization Company,* which was a dealer in real estate, we see no significance in the fact. The purpose of every conveyance is to enable the grantee to deal with the property as his own. The purpose of the statute is mani-

festly to compel foreign corporations to comply with its
terms before transacting business within this state or at-
tempting to hold or acquire property situated within this
state. We think the contentions made here, although pre-
sented as they are with great clearness and ability, are dis-
posed of by the prior decisions of this court. In nearly all
or every imaginable case all or some of the circumstances
here urged as grounds for estoppel are present. In *Hanna
v. Kelsey R. Co.* 145 Wis. 276, 129 N. W. 1080, the foreign
corporation was found to be a purchaser in good faith for a
valuable consideration, nevertheless the conveyance was held
void and the grantor not estopped. While it has been well
said the law is a harsh one, may prove inequitable, and result
in injustice to private parties, nevertheless it is the declared
law of the state, its constitutionality has been passed upon
by this court as well as by the supreme court of the United
States, and we are bound to give it effect according to its
terms; and we cannot say that in one case it shall have a cer-
tain effect because some private right has intervened and in
another case it shall have a different effect because some
other private interest is involved, but it is our duty to give
it effect according to the legislative intention.

It is claimed that the enactment of ch. 142, Laws 1911,
makes a change in the legislative policy of this state in view
of the decision of this court in *Hanna v. Kelsey R. Co.,
supra.* This chapter was considered in *Lanz-Owen & Co. v.
Garage E. M. Co.* 151 Wis. 555, 139 N. W. 393. We
see nothing in the enactment of that chapter to indicate any
intention or purpose on the part of the legislature to relieve
corporations thereafter transacting business or acquiring
property within this state from complying with sec. 1770*b*.
Had such been the legislative purpose it could very easily
have been stated. On the other hand, the legislature failed
to change the terms of sec. 1770*b* as interpreted in *Hanna v.
Kelsey R. Co.,* but chose to relieve those who prior thereto
had inadvertently or mistakenly supposed sec. 1770*b* not

to be applicable to their particular situation, by the enactment of ch. 142. This does not indicate a purpose to change the legislative policy of the state, but rather to adhere to it.

Holding as we do that the deeds in question were void and not voidable, we need not consider whether or not the *Bank* or *Munday* failed to exercise ordinary care with respect to the ownership of the property in question. It is manifest that the void deeds conveyed no title, the subsequent conveyances of the *Realty Realization Company* to *Walter* conveyed none, and that matter need not be further considered.

It is claimed that sec. 1770*b* and sec. 1770*j* are unconstitutional and void in that they violate the provisions of the constitution of the state of Wisconsin and the federal constitution, and that the judgment of the circuit court in failing to give force and efficacy to sec. 1770*j*, Stats., as amended by ch. 211, Laws 1917, infringed the rights, privileges, and immunities of the appellants under the applicable sections of the federal constitution, and that the judgment of the circuit court declaring said deeds void, which is here affirmed, impairs the obligation of said contract, contrary to the applicable provisions of the constitution of the state of Wisconsin and of the federal constitution; that by holding sec. 1770*b* and sec. 1770*j* of the Wisconsin Statutes, as amended, as construed by this court, valid, which holding is here affirmed, the trial court infringed the rights of the appellants under the applicable provisions of the federal and Wisconsin constitutions. We think these contentions have been disposed of in the prior decisions of this court and by the supreme court of the United States, and we shall not consider them further than to say that we have carefully examined them and are of the opinion that the decision of the trial court upholding said provisions, which is affirmed by this court, in no respect contravenes any of the provisions of the constitution of this state or of the United States. *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 89 N. W. 904;

*Diamond G. Co. v. U. S. G. Co.* 187 U. S. 611, 23 Sup. Ct. 206.

In *Duluth M. Co. v. Clancy,* 139 Wis. 189, 194, 120 N. W. 854, the court said:

"There is doubtless a limit beyond which the law cannot go in holding one party to an illegal contract bound and the other free, but that limit is not reached or passed in a case where this provision can be considered an additional penalty on that party for violation of law."

It is claimed that by the use of this language this court has placed an interpretation upon the act which makes it unconstitutional, it having been held in *Lanz-Owen & Co. v. Garage E. M. Co.* 151 Wis. 555, 139 N. W. 393, that a conveyance to an unlicensed corporation was not absolutely void, but was voidable merely at the election of the other contracting party; it being claimed that the power to impose this additional penalty for the doing of the prohibited act lies with a private citizen and may be imposed or not at his whim or caprice, and that the delegation of legislative power to a private individual to impose a penalty or not at his election renders the act unconstitutional and void.

The language of these decisions, fairly construed, is not subject to this interpretation. On behalf of the corporation and its assigns the contract is by the express provisions of the section absolutely void. That the character of the contract on behalf of the offending corporation is not altered or changed by its enforcement by the other party is abundantly established by the prior decisions of this court. In *Rib Falls L. Co. v. Lesh & Mathews L. Co.* 144 Wis. 362, 129 N. W. 595, it was distinctly held that while the plaintiff had a right to enforce its contract against a foreign corporation, and even if it exercised that right, the foreign corporation could not assert its rights under the same contract by way of counterclaim, but that it might show by way of defense that it had not received the goods contracted for and for the purchase price of which it was being sued. In *Phœnix N. Co. v. Trostel,* 166 Wis. 215, 164 N. W. 995, the plaintiff had

sold certain nursery stock to the defendant and as part of the contract had agreed to plant the trees and shrubs on the premises of the defendant, plaintiff having its nursery at Bloomington, Illinois, and the defendant living at Milwaukee, Wisconsin. There was a dispute, the plaintiff brought suit, and the only defense made was that plaintiff had not complied with sec. 1770b, the claim of plaintiff being that the transaction constituted interstate commerce and that it was therefore exempt from the provisions of the statute. Following *Browning v. Waycross,* 233 U. S. 16, 34 Sup. Ct. 578, this court held that the transaction did not constitute interstate commerce in view of the agreement to plant the trees and shrubs, and in response to claim of counsel that defendant should not be permitted to retain the benefits of the contract and then be relieved from the burden the court said:

"We fully concur in the view called to our attention by counsel for plaintiff that courts should not without good cause permit parties to reap the benefit of their contracts and then be relieved from their burdens. Where, however, a constitutional legislative declaration is explicit in declaring a prohibited contract void and the case is clearly within the prohibition, courts have but one course to pursue, and that is to enforce the statute."

We think this disposes of the question raised by appellants, and while, as pointed out by the late Justice TIMLIN, the language used, if considered apart from the text, may form a basis for the claim made, we think that the decisions in *Hanna v. Kelsey R. Co.* 145 Wis. 276, 129 N. W. 1080, and *Lanz-Owen & Co. v. Garage E. M. Co.* 151 Wis. 555, 139 N. W. 393, are not inconsistent with the other decisions of this court, and that it is clear that the contract does not become void or not at the election of the opposite party, but is void by the terms of the statute, and that the law has been so construed by this court from the beginning. To be sure, the opposite party may at his election enforce it, but so far

as it is a contract in favor of or on behalf of the offending corporation it is void.

The statute has been repeatedly applied to executed contracts, as in *Hanna v. Kelsey R. Co., supra,* where the deed to the foreign corporation had been delivered and the price paid, the corporation being admittedly an innocent purchaser. The grantor had in no manner repudiated the conveyance or sought to recover the property, and the court held the deed void at the instance of a third party. And in *Indiana R. M. Co. v. Lake,* 149 Wis. 541, 136 N. W. 178, a rock crusher had been delivered to and accepted by the town officers and town orders had been issued in payment, yet the contract was declared void. Again in *Mortenson v. Murphy,* 153 Wis. 389, 141 N. W. 273, a deed to a foreign corporation was declared void although the contract was fully executed and the purchase money paid.

There remains to be considered the disposition of the $5,000 paid by the *Realty Realization Company* under the contract of February 28, 1913, to the plaintiff *Robinson.* While the *Realty Realization Company* acquired no title to the realty in question and conveyed none to *Walter* and therefore *Walter* had no title which he could mortgage to the *Bank,* we think as between the *Realty Realization Company* and the receiver of the *Bank,* under the settled maxim that equity considers that done which ought to be done, and the *Realty Realization Company* having through *Walter* in fact mortgaged its interest in the premises, if any, to *Munday* as trustee for the *Bank,* the $5,000 in equity and good conscience belongs to the *Bank* and *William C. Niblack,* its receiver, and the judgment of the circuit court is modified accordingly. *Mr. Robinson,* to whom the sum was paid, agrees to repay the amount to whomsoever the court shall find entitled thereto. A similar disposition should be made of the notes, stocks, and securities which he received from the *Realty Realization Company.*

*By the Court.*—The judgment of the circuit court is modified as stated in the opinion and as so modified is affirmed. The *Wisconsin Trust Company* and *Frederick Robinson* to tax one bill of costs against the appellants.

VINJE, J., dissents in part.

ESCHWEILER, J. *(dissenting in part).*   As between the grantor of the real estate, *Robinson,* who conveyed knowing that it was in effect to be used for trading purposes, and the *La Salle Street Trust & Savings Bank,* which advanced the $40,000 upon the strength of such conveyance, I think that *Robinson* should be estopped from taking advantage of the statute relied upon.

KERWIN, J.   I concur in the foregoing dissenting opinion of Justice ESCHWEILER.

A motion by the appellants for a rehearing was denied, with $25 costs, on October 8, 1918, and the following opinions were filed November 6, 1918:

VINJE, J. *(dissenting).*   I am unable to concur in the view that the amendment to sec. 1770*j* of the Statutes made by ch. 211, Laws 1917, did not operate to validate the deeds to the *Realty Realization Company,* which had theretofore complied with sec. 1770*b*.   Briefly stated my reasons are these: The case of *Hanna v. Kelsey R. Co.* 145 Wis. 276, 129 N. W. 1080, holding that a deed to a foreign corporation that had not complied with sec. 1770*b* of our Statutes was void, was decided February 21, 1911.   No doubt many titles were affected by that decision.   To grant relief, ch. 142, Laws 1911, enacted sec. 1770*j*, which took effect May 13, 1911.   That section provided that any corporation which had before the passage of the act complied with sec. 1770*b* was relieved from any disability in the previous acquisition of real property in this state, and that a person claiming that the title of any corporation was void because of a fail-

ure to comply with sec. 1770*b* and the amendment of 1911 might within a year from May 13, 1911, begin an action or set up a defense to declare the title void. If such action or defense was not begun or set up before May 13, 1912, the right thereto expired. In the case of *Lanz-Owen & Co. v. Garage E. M. Co.* 151 Wis. 555, 139 N. W. 393, this court construed the act as a statute of limitations within which actions could be begun or defenses interposed to declare the title of noncomplying corporations void, and held that at the end of the year, in the absence of any action or defense, the title became absolute. Notwithstanding this decision, which was handed down January 7, 1913, the legislature that year amended sec. 1770*j* by the enactment of ch. 212, which, after the title and enacting clause, read:

"Section 1. Section 1770*j* of the statutes is amended to read: Section 1770*j*. 1. Any corporation organized otherwise than under the laws of this state, having acquired, or attempted to acquire, legal title, by deed, or lease to any real property in this state, before complying with the terms of section 1770*b* of the statutes, and which has thereafter, and before the passage of this *section,* complied with said section, shall be and is hereby relieved from any disability," etc.

If, as the court construes it, the words "this section" mean sec. 1770*j* of the Statutes and not sec. 1 of the amendatory act in which they are found, then the amendment of 1913 was entirely nugatory. All titles depending upon conditions existing prior to May 13, 1911, had been fully cured by the act of 1911 as construed in the *Lanz-Owen Case.* The same nugatory result, except as to non-profit-sharing corporations, is true of the amendment of 1917, ch. 211, which is in the same form as that of 1913. It is true that the law of 1911 says "this act" and that of 1913 "this section." But the natural construction is to refer the words to the section in which they are found in the amendatory act, namely, sec. 1, and not to the original section passed years prior thereto— especially when the latter construction nullifies the whole act. That they are intended to relate to the amendatory act

and not to sec. 1770*j* is made evident by an inspection of the original bill submitted in 1913, which had the words "this amendatory act" instead of the words "this section." The change was made in the redraft prepared by the drafting department of the legislative reference library to conform to the then and present custom of enacting general laws in terms of *sections* and not of *acts,* so that they shall fit into the statutes without further changes. The Wisconsin Legislative Directory and Manual of 1913 required all general bills amending sections of the statutes to be in this form: "Section ———. Section ——— of the statutes (of 1898) is amended to read: Section ———." Rule 46, sub. 3, p. 117. It will be observed that each bill has its own section numbers, and hence when there is found in a certain section thereof the expression, "before the passage of this section," it must refer to the passage of the section of the bill in which it is found and not to the passage of the section amended. At any rate the function of the library redraft was to make changes of form, not of substance, and it is but fair to presume that such was the intention in substituting the words "this section" for the words "this amendatory act." There is nothing in the language used to indicate the contrary. To charge the legislature with intent to cure conditions existing prior to the enactment of ch. 142, Laws 1911, in its enactments of 1913 and 1917 when those conditions were fully cured by the act of 1911 itself, except as to non-profit-sharing corporations, is to charge it with performing a mere idle ceremony in 1913, and to ignore the fact that the words "before the passage of this section," in the act of 1917, mean the same as they meant in the act of 1913, and refer to the section of the bill in which they are found and not to the section of the statute amended. We all agree it was intended by the act of 1911 to permit corporations theretofore complying with sec. 1770*b* to be relieved from its penalty. Why not give its subsequent acts the same intendment and make them accomplish something? That the period of relief

from disability was in each case extended to the time of the passage of the amendment accords with a sane legislative intent and results in effective legislation.   To construe the amendments otherwise is to assume repeated legislative attempts since 1911 to accomplish that which was substantially accomplished in 1911.

KERWIN and ESCHWEILER, JJ. *(dissenting)*.   Upon the motion made for a rehearing in this case we are now constrained to dissent from the construction given by the majority opinion construing the amendment of 1917.   And we concur with the views on that subject of Justice VINJE in his dissenting opinion.

The following opinion was filed November 16, 1918:

ROSENBERRY, J.   We have considered the matters urged upon our attention in the briefs of counsel for appellants in support of the motion for rehearing.   While some verbal inaccuracies are disclosed by the hypercritical analysis to which the opinion has been subjected, still, when the opinion is read in connection with the facts and circumstances of the case, these largely if not entirely disappear.   It was not supposed by the court that the question involved was whether the legislature intended by the enactment of ch. 211, Laws 1917, to confirm and validate the titles theretofore attempted to be acquired by all foreign corporations which had not complied with sec. 1770*b*, Stats.   It is perfectly clear that the enactments in question have no application to the acts of those foreign corporations which do not comply or have been excused from complying with sec. 1770*b*, and that fact is assumed without repetition throughout the opinion.

In the opinion it is said:   "If the legislature had intended by the re-enactment of sub. 1 of sec. 1770*j* to confirm and validate the title theretofore attempted to be acquired by all foreign corporations which had not complied with sec. 1770*b*," etc.   In the interest of clearness of expression there

should be inserted after the words "sec. 1770*b*" the words "at the time of attempting to acquire such title, and which had thereafter complied with sec. 1770*b*."

It is not accurate to say that a foreign corporation which has been excused from complying with sec. 1770*b* has in effect complied therewith, as is argued in the opinion. But, nevertheless, after re-examination, we are clearly of the opinion that the legislature did not, by the re-enactment in ch. 211, Laws 1917, of secs. 1770*b* and 1770*j*, intend to do anything except to exempt corporations not organized or conducted for profit from the provisions of sec. 1770*b* and to confirm the title attempted to be acquired by such corporations prior to the enactment of said chapter.

*By the Court.*—Motion for rehearing denied.